49 Cal.App.3d 53 (1975)
122 Cal. Rptr. 134
Estate of EDWIN D. WEMYSS, Deceased.
WENDY CLAIRE WEMYSS FUHRMAN, Petitioner and Appellant,
v.
BANK OF STOCKTON, as Executor and Trustee, etc., Objector and Respondent.
Docket No. 14816.
Court of Appeals of California, Third District.
June 11, 1975.
*55 COUNSEL
Lee & Hertzer, Theodore B. Lee, J. David Hertzer, Zuckerman & Sargent and Thomas Zuckerman for Petitioner and Appellant.
Gordon J. Aulik, Cavalero, Bray, Shumway & Geiger and Mark S. Bray for Objector and Respondent.
OPINION
EVANS, J.
Appellant petitioned the superior court for removal of the Bank of Stockton as executor and testamentary trustee of the estate of *56 Wemyss, alleging conflict of interest and breach of fiduciary duties to the estate. The trial court denied the petition, and this appeal ensued.
In 1962, decedent, Edwin D. Wemyss, was the owner of the Coca-Cola Bottling Company of Stockton, a sole proprietorship, and the sole stockholder of Coca-Cola Bottling Company of Stockton, Ltd., a California corporation. The corporation owned the real property upon which the bottling company was situated and held a franchise from the parent Coca-Cola Company for San Joaquin and Calaveras Counties. The sole proprietorship operated as the bottler and distributor of Coca-Cola for San Joaquin and Calaveras Counties through a sub franchise from the corporation.
In July 1962, decedent and Ray De Lap, the general manager of decedent's business, executed an agreement entitled, "Contract of Purchase and Sale" (hereafter, "contract") for the purchase of the assets of the sole proprietorship and the decedent's corporate stock. The purchase was to take effect upon the death of Wemyss and the total price was fixed at $800,000. Payment to decedent's estate was to be $250,000 down, with the balance represented by a promissory note secured by a chattel mortgage on the assets of the sole proprietorship and a pledge of the corporate stock.
In January 1965, the decedent transferred all the assets of the sole proprietorship to the corporation. As a result of the transfer, a modification agreement (hereafter, "modification") to the contract was executed on January 4, 1965. The purchase price and the method of payment remained the same. The modification did, however, provide that in addition to the purchase price, any accumulated earned surplus in the corporation was to be added to the purchase price and paid to decedent's estate within 30 days after the appointment of an executor or administrator. The modification also permitted the purchaser, at his election, to dissolve the existing corporation and transfer the assets to a new corporation. In such event, the stock of the new corporation was to be pledged to the estate as security for the payment of the balance of the purchase price. Except for those changes, the original contract remained unchanged.
In August of 1965, decedent executed his last will and testament naming the Bank of Stockton as executor and testamentary trustee. In January 1966, Wemyss died and his will was admitted to probate the following February. Respondent, as executor, petitioned the probate *57 court for an order directing a transfer of the property in accord with the terms of the contract and the modification. The petition was heard without objection, and the court ordered a transfer of the shares in conformity with the contract and modification. Pursuant to the order, the estate received a $250,000 down payment, a promissory note for the balance of the purchase price, plus $31,723.80, representing the net earned surplus existing at the date of death. Thereafter and to the time of trial, the respondent as executor had received a total of $531,723.78 principal as well as all interest accruing on the note. The purchaser has made all required payments in a timely fashion.
On December 2, 1969, appellant filed her petition for removal of the executor-trustee and its attorney Gordon Aulik, alleging conflicts of interest and improper interpretation of the modification and the contract. The petition vaguely alleged losses without factual specification and sought orders that the respondent bank and attorney Aulik return to the estate all fees received from the estate as compensation for the alleged losses. Trial was held following which the court adopted findings and conclusions and entered judgment denying relief to appellant.
Appellant contends (1) the trial court erroneously interpreted the modification and the contract by only allowing the estate a security interest in the corporate stock and not additional security interests in the assets of the corporation; (2) the evidence was insufficient to support the trial court's findings and judgment relating to respondent's alleged breach of fiduciary duties; and (3) assuming the findings are supported by the evidence, the respondent's conduct created a conflict of interest requiring its removal as executor and trustee.
The contentions are without merit.

INTERPRETATION OF THE AGREEMENTS
Appellant's first contention constitutes a collateral attack on a prior appealable order from which no appeal was taken. On February 21, 1966, the trial court made its order[1] directing transfer of personal property at the request of the executor, pursuant to the terms of the contract and modification.
*58 The attack by appellant upon the probate court's interpretation of the contract and modification constitutes an impermissible collateral attack upon the order of sale. "Actions to prevent enforcement of the judgment [order] or to defeat rights acquired under it are likewise collateral attacks on the judgment." (5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 5, p. 3588; Wood v. Roach (1932) 125 Cal. App. 631 [14 P.2d 170].) The order of sale is appealable (Prob. Code, § 1240), and the record below does not disclose an appeal or direct attack taken within the statutory time. (Cal. Rules of Court, rule 2.) (1) Where orders are independently appealable and become final by lapse of time, a subsequent attack on them in an appeal from some later order or judgment is collateral. (5 Witkin, Cal. Procedure, op. cit., Attack on Judgment in Trial Court, § 8, p. 3589.) (2) If a judgment is within the jurisdiction of the court, it can only be reviewed and corrected by one of the established methods of direct attack. (5 Witkin, Cal. Procedure, op. cit., Attack on Judgment in Trial Court, § 1, p. 3584; People ex rel. Mosk v. City of Santa Barbara (1961) 192 Cal. App.2d 342, 346 [13 Cal. Rptr. 423].) Despite the foregoing, inasmuch as the trial court erroneously addressed itself to the interpretation issue, we will consider that contention.
The modification provides in pertinent part: "In the event that BUYER desires to dissolve the COCA-COLA BOTTLING COMPANY OF STOCKTON, LTD., and to transfer the assets of said corporation to a new corporation, he may do so, and then and in that event all of the stock of the new corporation shall be issued to BUYER and said stock shall be pledged in order to secure the Promissory Note referred to in [the original contract]."
*59 The trial court received and considered extrinsic evidence as well as the contract and the modification. The evidence was not conflicting. (3) In the absence of conflicting evidence, the question of interpretation of the document is one of law; we are required to give the writings our own independent interpretation. (Estate of Platt (1942) 21 Cal.2d 343, 352 [131 P.2d 825]; Parsons v. Bristol Development Co. (1965) 62 Cal.2d 861, 866 [44 Cal. Rptr. 767, 402 P.2d 839].) The meaning and intent of the modification are clear and unambiguous. When a contract is reduced to writing, the intentions of the parties should be ascertained wherever possible from the writing itself. (Civ. Code, § 1639.) (4) In the absence of fraud or mistake, the intention of the parties as expressed in their agreement is controlling, and the courts are not empowered under the guise of construction or explanation to depart from the plain meaning of the writing and insert a term or limitation not found therein. (Apra v. Aureguy (1961) 55 Cal.2d 827 [13 Cal. Rptr. 177, 361 P.2d 897].)
(5) The clear language of the modification permitted the buyer to dissolve the existing corporation and transfer the assets of the existing corporation to a new corporation. In that eventuality, the buyer was required to pledge the stock of the new corporation to secure the promissory note. The language of the modification is unambiguous and does not require reference to extrinsic evidence to determine its intent and meaning. Where the language is clear and not absurd, it will be followed. (Civ. Code, § 1638; Apra v. Aureguy, supra; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 520, pp. 443-444.)
The trial court properly interpreted the modifying contract as giving rise to a security interest in the stock of the new corporation only.

SUFFICIENCY OF THE EVIDENCE
(6a) The facts surrounding the actions of the respondent bank which could be the basis for finding a conflict of interest are uncontroverted and, as set forth, support the findings of fact. Appellant's quarrel is with the conclusions which flow from the findings. The conclusion or judgment that appellant is not entitled to any relief by reason of her petition for removal of the executor and trustee is objected to generally by appellant in this appeal.
To carry out the terms of the contract and the modification, the purchaser borrowed a substantial amount of the down payment from respondent and gave in exchange a demand note. To secure the loan, De *60 Lap, as purchaser, made a secondary pledge of the stock of Coca-Cola Bottling Company of Stockton, Inc., and additionally assigned to the bank a security interest in his life insurance. Thus, at the time of trial, respondent held two security interests in the stock of the Coca-Cola Bottling Company of Stockton, one to secure the balance of the purchase price due the estate, and a subordinate interest to secure the loan made by respondent to De Lap.
In May 1967, De Lap obtained from the Bank of Stockton an additional loan of $150,000 to be used for capital improvements on the property of the Coca-Cola Bottling Company of Stockton, Inc. A promissory note was given for the loan which was secured by a deed of trust on the corporate real property. The loan was further secured by a security instrument on certain personal property owned by the corporation. It is on these basic facts that appellant contends that respondent should be removed as executor and trustee.
In In re Lerch's Estate (1960) 399 Pa. 59 [159 A.2d 506], the Supreme Court of Pennsylvania approved a loan by a bank's commercial department to a corporation in which a trust administered by the bank owned a minority interest in the stock. The court, at page 513, said, "the trustee merely made periodic loans of money from its commercial department to [the company] and no purchase of any asset of the commercial department was made with any funds of the trust estate. To hold such a corporate loan in violation of fiduciary duty would impose undue and unnecessary restriction upon commercial banking." (See also, In re Binder's Estate (1940) 137 Ohio St. 26 [27 N.Ed.2d 939, 946, 129 A.L.R. 130].)
In Braman v. Central Hanover Bank & Trust Co. (1946) 138 N.J. Equity 165 [47 A.2d 10, 25], a beneficiary of a testamentary trust challenged the sale of shares of common stock by the trustee at what was alleged to be an inadequate and unconscionable price. During the administration of the trust, the company in which the stock was sold had borrowed in excess of $2,400,000 from the bank. The loan transactions were criticized on the ground that the resulting debtor-creditor relationship was inconsistent with the bank's trusteeship. The court, at page 25, stated, "And while `a trustee may not take a position whereby self-interest might induce him to relax the obligation he owes to the cestuis, or that would pit his own advantage against their welfare' [citations], the loans ... involved no self-dealing and no breach of trust."
*61 The conduct of the bank as a commercial lender has not been adverse to the fiduciary interests it holds as trustee for the estate. A loan by the commercial department, unless made to secure an advantage to the bank adverse to the estate, does not require removal of the bank as trustee.

CONFLICT OF INTEREST
(7) It is well established that probate courts possess wide discretion in determining whether the facts of a particular case warrant removal of an administrator or executor. Except for a clear abuse of that discretion, the order either removing or refusing to remove an administrator or executor for violations of his trust, may not be interfered with on appeal. The rule is applicable even though the evidence is of such nature that reasonable minds would possibly differ regarding the facts. (Estate of Healy (1902) 137 Cal. 474 [70 P. 455]; Estate of Watterson (1933) 130 Cal. App. 741 [20 P.2d 772]; Estate of Palm (1945) 68 Cal. App.2d 204 [156 P.2d 62].) The courts are reluctant to defeat the will of a testator by removing his chosen executor. (8) The testator's selection of an executor should not be annulled except upon the clear showing that the best interests of the estate require such action. (Estate of Wacholder (1946) 76 Cal. App.2d 452 [173 P.2d 359]; Estate of Cole (1966) 240 Cal. App.2d 324, 328 [49 Cal. Rptr. 419].)
The determination of the question of whether the existence of an adverse personal interest on the part of an executor is sufficient ground for removal from office depends upon the facts and circumstances of each particular case. (6b) The evidence discloses at best a mere potential conflict. The petition and the evidence produced fail to disclose any evidence of mismanagement or of actions on the part of respondent detrimental to the estate or to the beneficiary's interest.
The judgment appealed from is affirmed.
Regan, Acting P.J., and Paras, J., concurred.
A petition for a rehearing was denied June 20, 1975, and appellant's petition for a hearing by the Supreme Court was denied August 6, 1975.
NOTES
[1] The order provides in part:

"IT IS FURTHER ORDERED that the transfer of said stock to said purchaser be completed only upon payment by the purchaser to the Executor of the sum of TWO HUNDRED FIFTY THOUSAND ($250,000.00) DOLLARS, plus a sum equal to the accumulated net earned surplus existing at the date of the death of deceased, and the delivery by the purchaser to the Executor of a Promissory Note in the sum of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS, payable in equal annual installments over a period of twelve (12) years on the same day of each year, commencing on March 2, 1967, with the unpaid principal balance bearing interest at the rate of six (6%) per cent per annum, payable at the same time as, and in addition to, the annual installments of principal, which Note shall permit prepayment without penalty. Said Note shall be secured by a pledge from the purchaser of the stock of COCA-COLA BOTTLING COMPANY OF STOCKTON, LTD., acquired hereunder, which pledge shall be in form and upon such terms and conditions as shall be satisfactory in the judgment and discretion of the counsel for the Executor herein. The transfer of the stock, payment, delivery of Promissory Note and pledge are all to be concurrent conditions.
"IT IS FURTHER ORDERED that in the event that said purchaser desires to dissolve the COCA COLA BOTTLING COMPANY OF STOCKTON, LTD., and to transfer the assets of said corporation to a new corporation, he may do so, and then and in that event all of the stock of the new corporation shall be issued to purchaser and said stock shall be pledged in order to secure the Promissory Note hereinabove referred to."