Argued and submitted November 6, 1997, reversed and remanded with
instructions January 7, 1998

## In the Matter of the Estate of
## Marlisha Rohrback, Deceased.

## Timothy WHARFF
## and Julie Limbocker,
*Appellants,*

*v.*

## Marleeta ROHRBACK,
*Respondent.*

## (95C-13514; CA A96486)

952 P2d 87

Les Swanson, Jr., argued the cause for appellant. With him on the briefs was Carl M. Swanson.

Greg Noble argued the cause and filed the brief for respondent.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

Appellants[1] appeal an order of the probate court denying their motion to remove Marleeta Rohrback (respondent), mother of the decedent Marlisha Rohrback, as personal representative of the estate. We reverse.

The primary beneficiary of the estate is Sonja Rohrback, infant daughter of Marlisha. The only asset of the estate is the wrongful death claim being pursued by respondent arising out of the October 30, 1995, accident that killed Marlisha. The accident occurred about 2:00 a.m. on Interstate 5 near Albany. Respondent was driving a Toyota car northbound; Marlisha, who was 15, was in the front passenger seat holding her baby. In the back seat were respondent's boyfriend, Walter Stewart, and Randy Zink, Marlisha's boyfriend. They were returning from a trip to Reno.

Respondent's version of the accident was that the car was acting up and that the baby spit up. Marlisha undid her seat belt to tend to the baby, and respondent heard Stewart yell, "Look out, hold on." Respondent looked in the rearview mirror and saw a semi-truck coming. The truck hit the Toyota, knocking it off the road. The car rolled over several times, and Marlisha was thrown from the car and killed. The driver of the truck, Wesley Stone, fled the scene, drove several miles and then left the freeway to make an anonymous 9-1-1 call to report the accident. It took about 30 minutes for respondent and the other survivors to stop a passing vehicle and call emergency personnel. Stone was arrested about 10 miles north of the accident scene.

An officer found respondent's purse at the scene of the accident. The purse contained a black case with three marijuana pipes with marijuana residue, two baggies and a snort straw, all with methamphetamine residue, and razor blades. Respondent said that the black case did not belong to her, that Stewart found it in a bathroom at a rest stop and that it must have rolled into her purse when the car rolled over.

---

[1] Appellants are Timothy Wharff, the natural father of the surviving infant, and the infant's paternal grandmother, Julie Limbocker.

Less than three hours before the accident, Stone had been cited for speeding. After his arrest, it was learned that he had made false entries in his log and had violated the number of hours he was to drive his truck. Numerous medications were found in his cab, including Dayquil and Sudafed. The results of a urine test were positive for methamphetamine.

Stone was prosecuted for leaving the scene of an accident and manslaughter. He was convicted of leaving the scene and of criminally negligent homicide.[2] In preparation for Stone's criminal trial, the report of the state's accident reconstruction expert stated that the accident occurred in the slow, right-side lane of the freeway, that respondent's car was probably beginning to turn off the freeway at the point of impact and that it was traveling between 34 and 44 miles per hour.

On November 16, respondent was appointed personal representative, and she filed a wrongful death action.[3] Following a year of negotiations, an agreement was reached on December 4, 1996, settling the claim for $450,000, including approximately $42,000 for respondent.[4] On December 6, appellants filed their motion to remove respondent as personal representative.

As described more fully below, appellants asserted that, because of respondent's potential culpability in the accident, she could not objectively evaluate whether the estate should bring a separate personal injury action against her, nor could she objectively evaluate the proposed settlement,

---

[2] In Stone's first trial, the jury was unable to reach a verdict on the manslaughter charge. We granted respondent's motion to take judicial notice that Stone was convicted of criminally negligent homicide after this appeal was filed.

[3] The wrongful death action named Stone, his partnership, and his employer as defendants.

[4] The proposed settlement allocates:

1. $150,000 for attorney fees;
2. $731.46 for costs;
3. $7,071.47 for medical and burial expenses;
4. $250,000 to establish an annuity for the infant beneficiary; and
5. $42,197.07 for respondent.

including any allocation and distribution of settlement proceeds to her as a beneficiary of the estate. The probate court denied that motion. Pending this appeal from the denial, the probate court has deferred approving the proposed settlement.

We review the denial of appellants' motion for abuse of discretion. *In re Faulkner's Estate*, 156 Or 23, 27, 65 P 1045 (1937). The personal representative of an estate has a fiduciary duty to the beneficiaries of the estate. ORS 114.265. The personal representative must be in a position to act indifferently in matters of the estate, *In re Estate of Mills*, 22 Or 210, 212, 29 P 443 (1892), and a conflict between the interest of the personal representative in a personal capacity and the interest of the estate may be a basis to remove a personal representative. *See Vander Galien v. Vander Galien*, 47 Or App 233, 236, 614 P2d 127 (1980) (evidence showed that a conflict was likely to arise between interest of mother in her personal capacity and interest of estate and wife as heir that, coupled with wife's statutory preference, justified removal of mother and appointment of wife). Whether a personal representative should be removed must be decided on the particular facts of the case. *In re Elder's Estate*, 160 Or 111, 117, 83 P2d 477 (1938). The question is whether there is a substantial and bona fide claim of interest in the estate adverse to the interest of the personal representative. *In re Faulkner's Estate*, 156 Or at 28. Consistently with those precedents, we conclude that a court's refusal to remove a personal representative with a substantial and bona fide conflict of interest constitutes an abuse of discretion.

Appellants contend here that, because of respondent's role in the accident, there was, and is, a real conflict between respondent's personal interest and those of the estate and the infant beneficiary. They argue, particularly, that the conflict prevents respondent from deciding, in an "indifferent manner," whether (1) she, as personal representative, should make a claim against herself for contributing to the accident, in that she was driving a malfunctioning and disabled vehicle at a slow rate of speed and in failing to keep an adequate lookout under the circumstances; (2) she should receive a portion of the proposed settlement or eliminate or reduce her settlement; and (3) she should settle out-of-court

with the trucking company, thereby avoiding the issue of her own possible responsibility for the accident, or go to trial and seek punitive, as well as "adequate" compensatory, damages.[5]

Respondent argues that any "conflict" is illusory and that, in all events, given the comparative costs and benefits of her removal, the court's denial of appellants' motion was within the range of reasonable discretion. In asserting that there is, in fact, no conflict, respondent notes that neither the trucking company's insurance carrier nor its attorney ever contended that she was at fault, and she further contends that the arguments appellants make as to her alleged comparative fault are "factually suspect" and, at most, raise a potential conflict. Emphasizing the fact of Stone's involvement, she contends that the "factual evidence establishes that fault rests" with Stone and that he was solely responsible for the accident.

Those evidentiary arguments miss the point. Although a jury *might* conclude that respondent was completely without fault, there is also sufficient evidence to create a real issue as to whether, and to what degree, respondent might be liable for the accident. It is that evidence—that respondent, necessarily, cannot objectively assess—that gives rise to the conflict.

Respondent argues, nevertheless, that she is the statutorily preferred personal representative, ORS 113.085(1), and that the costs to the estate from her removal would exceed any benefit—*i.e.*, that the estate cannot benefit from her removal and would, instead, be damaged. She argues, specifically, that there can be no recovery from her because she is judgment proof and there is no insurance and that the appointment of a new personal representative would add expense and delay.[6]

---

[5] Appellants contend that the settlement is not adequate, offering evidence in support of their contention that the value of the wrongful death claim is about $750,000.

[6] Respondent asserts that delay of the settlement "exceeds $3,000.00 a month and $40,000.00 a year" in lost interest. However, the settlement documents before us, consisting mainly of a breakdown of annuity payments, do not show the basis for respondent's assertion.

■ ■ We disagree. The statutory preference is in the appointment of a personal representative. It does not control the determination of whether that personal representative should later be removed when there is a conflict of interest. Respondent's present economic condition is likewise irrelevant as to whether a possible claim against her creates a conflict. Furthermore, if she were joined in the wrongful death action and a judgment obtained against her, that judgment would have value. *See Ridenour v. Lewis*, 121 Or App 416, 419, 854 P2d 1005, *rev den* 317 Or 583 (1993) (judgment may have value because it is collectible from the judgment debtor's assets, prospective assets or insurance, or has market value as an assignable property interest). The judgment would be valid for 10 years and renewable for another 10 years. ORS 18.360. In the light of respondent's role in the accident and the conflict arising from the settlement to her, we are also not persuaded that respondent's claims of additional expense and delay in settling the wrongful death action show that she should not be removed.[7]

■ There is a substantial and bona fide conflict between respondent's personal interest and the interests of the estate. Accordingly, the probate court abused its discretion in denying appellants' motion to remove respondent as personal representative.

Reversed and remanded with instructions to enter order removing Marleeta Rohrback as personal representative of the Estate of Marlisha Rohrback and for further proceedings.

---

[7] A copy of the wrongful death complaint in the estate file shows that the action was brought by "Marleeta Rohrback, Personal Representative of the Estate of Marlisha Rohrback." The complaint seeks damages for, *inter alia*, "pecuniary loss and loss of society, companionship and services of decedent to * * * her natural mother[.]" The settlement payment to respondent appears to arise from that claim. However, it is not clear from the file, or from the parties, what the nature of respondent's claim in the wrongful death action is or what the relationship of the direct settlement payment to that claim is.