**Leonard HELGASON and Kenneth Wood, Appellants,**

v.

**Thomas MERRIMAN, Appellee.**

No. S–9665.

Supreme Court of Alaska.

Dec. 7, 2001.

⚷163(2)

James W. Hill, Jr., Alaska Law Center, Anchorage, for Appellants.

Melvin M. Stephens, II, Kodiak, for Appellee.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, and BRYNER, Justices.

*OPINION*

FABE, Chief Justice.

## I. *INTRODUCTION*

Clara Helgason died testate in 1998. Her will named Thomas Merriman as the personal representative, and the superior court appointed him as such. Helgason's heirs, her sons Leonard Helgason and Ken Wood, sought removal of Merriman as the personal representative, citing alleged conflicts of interest and undue influence. The superior court held a hearing and issued a ruling denying the request for removal. Helgason's sons appeal this ruling.

## II. *FACTS AND PROCEEDINGS*

### A. *Facts*

Clara Helgason died in Kodiak on September 20, 1998, at the age of ninety, leaving two heirs, her sons Leonard Helgason and Ken Wood. Clara Helgason left a series of wills, and the last of these, dated November 5, 1996, was apparently admitted into probate in the superior court. In that will, Clara Helgason nominated a friend, Thomas Merriman, as the personal representative of her estate.

Clara Helgason and Thomas Merriman had a friendship that began in July 1989, when Merriman flew with his wife and some friends to Terror Bay, where Clara Helgason lived at the time. Merriman and Helgason thereafter maintained a personal friendship. The Merrimans ran errands for Helgason and socialized with her from 1989 until her death.

In 1989 or 1990 Helgason sold her hunting lodge and residence at Terror Bay, and moved into a house that she owned in Kodiak. Soon after this sale, Merriman introduced her to Ken Horwitz, an executive with Paine Webber, and Helgason subsequently entrusted her assets to Horwitz's management. Merriman discussed with Helgason

her plans for writing a will before the first of her four wills was executed in February 1992. Merriman agreed to serve as the trustee of the trusts created in that will, but he testified that he "did not suggest provisions ... or attempt to influence Clara's wishes."[1]

Also sometime after Helgason sold the lodge and moved to Kodiak, Helgason apparently formed the desire to give a gift of money to the Merrimans, as a token of friendship and appreciation. Helgason spoke with Ken Horwitz about this and Horwitz counseled her to structure her gift as a loan to avoid gift and estate tax problems and to protect the estate for her heirs. On December 27, 1993, Helgason executed a promissory note with the Merrimans in the amount of $100,000, on terms somewhat favorable to the Merrimans—at an interest rate of six percent, due "upon maturity," with no collateral agreement.[2] The Merrimans repaid approximately half of the principal and some of the interest before Helgason forgave the remainder of the debt on June 4, 1998, a few months before her death.

Beginning with her second will, Helgason discussed with attorney Matt Jamin the possibility of including a specific devise in the will for Thomas and Cheryl Merriman. The gift of $50,000 was included in her second will, but this was subsequently reduced to $15,000 in the third and fourth wills.

Helgason's final will also grants substantial powers to Thomas Merriman, as it names him personal representative and trustee of two trusts created by the will. The will distributes the bulk of the estate to two spendthrift trusts for the benefit of Helgason's sons and grandson. The distribution of proceeds from these trusts is entirely within the discretion of the trustee, Merriman.[3]

The beneficiaries of these trusts are not entitled to the corpus, which is to be donated to charity upon the deaths of the beneficiaries.

### B. *Proceedings Below*

After Clara Helgason's death, her final will from November 5, 1996 was apparently admitted into probate in the superior court, and Thomas Merriman was appointed as the personal representative of the estate, as the will dictated. On December 14, 1998, the plaintiffs, Helgason's sons Ken Wood and Leonard Helgason, filed a motion to revoke the will and remove Merriman as the personal representative. Later, on June 16, 1999, the plaintiffs withdrew their motion to revoke the will; however, the plaintiffs did not abandon their motion to remove Merriman as the personal representative.

On October 13, 1999, a hearing on this issue was held before Standing Master Anna Moran. On February 25, 2000, the master issued recommendations and a proposed order denying the plaintiffs' motion. On March 24, 2000, the superior court accepted these findings. The plaintiffs appeal this decision.

### III. *STANDARD OF REVIEW*

■ We have never before reviewed the denial of a motion to remove a personal representative under AS 13.16.295. We will apply the abuse of discretion standard here, since we apply this standard to review similar disputes in the probate context, such as the reasonableness of attorney's fees and of the personal representative's fees,[4] and in the child welfare context, such as the appointment of a guardian ad litem.[5] We will only

---

1. The actual wills were drafted by attorney Matt Jamin and other attorneys in his law firm.

2. However, Helgason did have the ability to call the note at any time with 90 days' notice.

3. The will provides: "[T]he trustee shall distribute to, or use for the benefit of, [the beneficiaries] as much of the income and principal of the trust as the trustee, in his or her sole discretion, from time to time believes desirable for [the beneficiaries'] health, support in reasonable comfort, edu-

cation, best interests and welfare, considering all circumstances and factors deemed pertinent by the trustee."

4. *Gudschinsky v. Hartill*, 815 P.2d 851, 854 (Alaska 1991) (personal representative's fees); *In re Estate of Gregory*, 487 P.2d 59, 64 (Alaska 1971) (attorney's fees).

5. *Rubright v. Arnold*, 973 P.2d 580, 585 (Alaska 1999).

overturn the superior court's findings of fact if they are clearly erroneous.[6]

## IV. DISCUSSION

The only dispute in this appeal is whether Thomas Merriman should remain as the personal representative. No other probate issues, such as the validity of the will, are before us.

Alaska Statute 13.16.295 states that "[c]ause for removal exists when removal would be in the best interests of the estate." The statute also states that removal is proper under other circumstances that are not relevant to this appeal.[7]

The plaintiffs claim that Merriman should be removed as the personal representative because his removal is in the "best interests" of the Helgason estate. They present essentially two arguments to support this conclusion: There is a conflict of interest that requires removal, and hostility between Merriman and the plaintiffs justifies removal.

### A. The Alleged Conflicts of Interest Do Not Justify Merriman's Removal.

The plaintiffs claim that Merriman has one or more conflicts of interest that render him unfit to serve as the personal representative of Clara Helgason's estate. We must first determine what standard to use to decide if a conflict of interest is an event that warrants removal of the personal representative. Then we apply the proper standard to determine if the alleged conflicts of interest warrant removal.

### 1. Removal of the personal representative is proper if evidence establishes a "real issue" as to whether there is a substantial conflict of interest.

Because we have never before addressed AS 13.16.295, we must articulate a standard

to determine how serious a conflict of interest must be, and how much proof of that conflict is required, to warrant removal of a personal representative.

The parties in this appeal ask us to adopt a standard used by other jurisdictions. Under this standard, removal is required if the plaintiffs present evidence that raises a "real issue" as to whether there is a substantial conflict of interest. There is such a real issue when the evidence indicates that the personal representative is potentially liable to the estate because of the existence of some cause of action against the personal representative.

This standard was articulated clearly by an Oregon appellate court in *Wharff v. Rohrback.*[8] In *Wharff,* the court held that a showing of a "substantial and bona fide" conflict of interest will be enough to require the removal of a personal representative; such a showing is made when there is "sufficient evidence to create a real issue" as to whether there is a substantial conflict of interest.[9] In *In re Estate of Peterson,* the Montana Supreme Court implied that a conflict of interest required removal when there was a potential claim that could be brought against the representative, since in that case a conflict was "likely to arise."[10] These two cases together support the proposition that removal is required if there is sufficient evidence, such as a potential claim against the representative, that creates a "real issue" of whether or not there is a substantial conflict of interest. We adopt this standard where a party seeks removal of the personal representative because of a conflict of interest. Once a "real issue" of a substantial conflict of interest is raised, removal of the personal

---

**6.** *Bowman v. Blair,* 889 P.2d 1069, 1072 n. 5 (Alaska 1995).

**7.** Cause for removal also exists "if it is shown that a personal representative or the person seeking appointment intentionally misrepresented material facts in the proceedings leading to appointment, or that the personal representative has disregarded an order of the court, has become incapable of discharging the duties of the office, or has mismanaged the estate or failed to

perform any duty pertaining to the office." AS 13.16.295. The plaintiffs have not alleged that Merriman has committed any such acts.

**8.** 152 Or.App. 68, 952 P.2d 87 (1998).

**9.** *Id.* at 89–90.

**10.** 265 Mont. 104, 874 P.2d 1230, 1232–33 (1994).

representative is mandatory and it is an abuse of discretion to deny removal.[11]

■ We also note that under the standard that we adopt here the plaintiffs need only present *some* evidence of a substantial conflict of interest to raise a "real issue" requiring removal of the personal representative. However, a mere allegation of a conflict of interest is not sufficient.[12]

The superior court implicitly applied this standard by rejecting the notion that a "mere allegation" of a conflict of interest could be enough to require removal of the personal representative, and by noting that the plaintiffs "have not presented any evidence of wrong doing or undue influence which would warrant removing Merriman as personal representative."

### 2. No "real issue" of a substantial conflict of interest has been raised.

■ The plaintiffs argue that there is a real issue of whether there is a conflict of interest because Clara Helgason's estate may have one or more causes of action against Merriman; therefore, they contend, Merriman has a conflict of interest because his personal interests are at odds with the estate's interests. *Wharff v. Rohrback* supports the proposition that there is a real issue of a conflict if the estate has a viable claim against the personal representative for money damages. In *Wharff,* the representative was involved in the same car accident that killed the decedent; she was driving the car carrying the decedent.[13] Because of the circumstances of the accident, the estate had a potential wrongful death claim against the representative.[14] The court held that this potential claim raised a real issue of whether there was a conflict of interest, since the

representative would have to decide whether to file the claim against herself.[15]

The plaintiffs claim that *Wharff* presented facts analogous to the circumstances of this appeal. The plaintiffs claim that, like the estate in *Wharff,* Clara Helgason's estate has potential claims against Merriman—claims that require Merriman to decide whether he should file suit against himself, creating a conflict of interest. However, the plaintiffs do not clearly define these potential claims; they merely state that Merriman's conduct in allegedly inspiring the $100,000 loan and its forgiveness, and his involvement in the drafting of each version of Helgason's will give rise to causes of action against Merriman.

The plaintiffs make essentially three arguments in their attempt to show the estate has claims against Merriman that raise a real issue of a conflict of interest. The plaintiffs contend that the estate has potential or actual claims of action against Merriman concerning the $100,000 loan made to Merriman and the circumstances of the will's formation and Merriman's alleged undue influence. The plaintiffs also make a subsidiary argument that the superior court placed undue weight on the fact that Merriman was designated in the will as the named personal representative. For the reasons stated below, we conclude that it was not an abuse of discretion to hold that these arguments fail to raise a real issue of a substantial conflict of interest.

### a. There is no evidence that the estate has a cause of action against Merriman concerning the $100,000 loan.

■ The plaintiffs' first argument is that the circumstances surrounding the $100,000 loan create a conflict of interest. In this argument, the plaintiffs restate their version of the facts concerning the loan and its forgiveness, and imply that Merriman's partic-

**11.** *In re Estate of Wemyss,* 49 Cal.App.3d 53, 122 Cal.Rptr. 134, 138 (1975) (implying that sufficient showing of conflict of interest requires removal); *Ramsdell v. Union Trust Co.,* 202 Conn. 57, 519 A.2d 1185, 1190 (1987) (same); *In re Estate of Devoy,* 231 Ill.App.3d 883, 173 Ill.Dec. 460, 596 N.E.2d 1339, 1342 (1992) (same, dicta); *Vaughn v. Batchelder,* 633 So.2d 526, 528 (Fla. App.1994) (holding that sufficient showing of conflict of interest requires removal); *Wharff,* 952 P.2d at 89–90 (same).

**12.** *In re Estate of Wemyss,* 122 Cal.Rptr. at 138 (implying that some evidence of a conflict of interest is required to justify removal).

**13.** 952 P.2d at 88.

**14.** *Id.* at 89–90.

**15.** *Id.*

ipation in these events was somehow improper, giving rise to a cause of action against him.

In response, Merriman maintains that the plaintiffs failed to produce any evidence that Merriman's conduct was wrongful and could be the basis of any suit by the estate; therefore, the plaintiffs have only *alleged* a conflict of interest. Merriman contends that *Wharff* is distinguishable because, in that case, the evidence that was actually presented demonstrated a potential claim for the estate against the personal representative.

The superior court did not squarely address this dispute. It did, however, review the facts concerning the $100,000 loan and concluded that these circumstances alone did not create a conflict of interest.

The plaintiffs presented no evidence of a conflict of interest concerning the $100,000 loan. The record indicates that Clara Helgason originally wanted to give a large gift to the Merrimans but was instead persuaded to give them a loan on somewhat favorable terms. The Merrimans made regular payments on the loan, and the financial advisor Ken Horwitz stated that the loan was a "very good investment" for Clara Helgason. A few months before her death, when Helgason was in very poor health, she forgave the balance of the loan.

Even though there is evidence that the terms of this loan were somewhat more favorable than Merriman could have gotten through a bank and that Helgason forgave the loan while she was sick, the record reveals no other evidence that tends to show that there was anything potentially actionable about Merriman's conduct concerning the loan and its forgiveness. The plaintiffs do not explain how these facts translate into a cause of action on behalf of the estate, nor

do they describe this alleged cause of action. We decline to speculate on what the cause of action could be, since these facts do not support any apparent cause of action based solely on the facts concerning the $100,000 loan.[16]

> b. *There is no evidence that the estate has any cause of action against Merriman based on Merriman's alleged exercise of undue influence.*

The plaintiffs also claim that Merriman's influence over Helgason gives rise to a cause of action because his conduct constituted undue influence. Two other courts have affirmed removals of personal representatives at least partially on this basis.[17]

In *Paskvan v. Mesich*[18] and *In re Estate of Kraft*,[19] we discussed the circumstances under which a finding of "undue influence" may be found. In situations in which the defendant is the "principal or sole beneficiary," had a "confidential relationship" with the testator, and "participated in the drafting of the will," the defendant is presumed to have exercised undue influence, and must prove otherwise.[20] If those circumstances do not apply, to show undue influence the plaintiff must show that "by reason of influence exercised by [the defendant], the testator was virtually compelled to make a will which he would not have made had he been left to the free exercise of his own judgment and wishes."[21]

The plaintiffs argue that, under *Kraft*, there was undue influence because Merriman was involved in the drafting of the will and ingratiated himself with Clara Helgason to such an extent that Helgason made a will that she would not have made if left to the free exercise of her judgment and wishes. The plaintiffs also argue that, under *Pa-*

---

16. *In re Dissolution of Marriage of Alaback,* 997 P.2d 1181, 1184 n. 3 (Alaska 2000) ("Points given only a cursory treatment in the argument portion of a brief will not be considered on appeal, even if developed in the reply brief.").

17. *Laushway v. Onofrio,* 670 So.2d 1135, 1136 (Fla.App.1996) (removal of personal representative was proper because he exercised undue influence over testator); *Pio v. Ramsier,* 88 Ohio App.3d 133, 623 N.E.2d 174, 176 (1993) (removal of interested executor was in the "best inter-

ests" of the estate where there were allegations of undue influence against the executor).

18. 455 P.2d 229, 232–33 (Alaska 1969).

19. 374 P.2d 413, 417 (Alaska 1962).

20. *Paskvan,* 455 P.2d at 233.

21. *Kraft,* 374 P.2d at 417.

skvan, Merriman took advantage of Helgason's advanced age, unsophistication, and medical condition to gain an "improper" advantage.

Merriman responds to these arguments by claiming that only *Kraft* is relevant to this appeal, and that there is no evidence that Helgason wrote the will in a way that was compelled. Merriman relies primarily on the terms of the will and testimony showing the friendship between the Merrimans and Helgason, noting that the will includes only a modest gift for Merriman and vests him with some powers and discretion over the trusts created by the will; Merriman implies that this is easily explained by the friendship, and that the evidence shows that the Merrimans did not actively seek these gifts.

The superior court noted summarily that "[the plaintiffs] have not presented any evidence of wrong doing or undue influence."

■ Our decision in *Paskvan* is not relevant to the circumstances of this appeal. Merriman is not the "principal or sole beneficiary" of the will,[22] since he receives only $15,000 and the power to administer trusts and distribute items of personal property unwanted by Helgason's sons. There is no evidence in the record that Merriman's relationship with Helgason was "confidential," even though the two were friends; and the only evidence that Merriman "participated" in drafting the will was that Merriman and Helgason spoke about the will before she drafted the first version, and that Helgason sometimes spoke to her lawyer, Matt Jamin, with Merriman present.

Also, there is no evidence of undue influence under the standard we announced in *Kraft*.[23] There is some evidence in the record that tends to show that Merriman had some influence on Helgason, and the will does confer some benefits on Merriman. Merriman was apparently a friend of Helgason's, and the two of them did, on occasion, drink wine that Merriman supplied. Also, Merriman received some benefits from Helgason, apparently as the result of their friendship. Foremost among these was the $100,000 loan and its forgiveness, which has already been discussed. However, under the will, Merriman received only the $15,000 gift along with the trustee powers granted by the will.[24]

In our undue influence analysis in *Kraft*, we were primarily concerned with whether the defendants benefitted from the will.[25] In rejecting the undue influence claim in that case, we noted that the defendants who were involved in the preparation and execution of the will were not beneficiaries of the will.[26] Even though Merriman is a minor beneficiary under the will, the plaintiffs do not present any evidence to support the inference that Merriman exercised his influence to receive any benefits under the will or exercised his influence to otherwise shape the will. On this point, plaintiffs seem to complain that any such evidence of undue influence, if it existed, would probably only be held by Merriman himself, since no one else was present during the episodes in which Merriman allegedly exercised undue influence over Helgason. However, the plaintiffs failed to conduct any discovery on this issue; they took no depositions and presented no interrogatories or requests for admissions, despite the fact that they had ample time to do so, since Merriman was appointed as personal representative in September 1998, and the hearing took place in October 1999. Therefore, it was not an abuse of discretion to hold that the plaintiffs have failed to raise a real issue

---

**22.** *Paskvan*, 455 P.2d at 233.

**23.** Under *Kraft*, undue influence is shown if "by reason of influence ... the testator was virtually compelled to make a will which he would not have made had he been left to the free exercise of his own judgment and wishes." 374 P.2d at 417.

**24.** The will states that the trustee (Merriman) has the power "[t]o lend money to the personal representative of my estate, and to purchase property from the personal representative of my estate

and retain it for any period of time without limitation, and without liability for loss or depreciation in value, notwithstanding any risk, or lack of productivity or diversification."

Of course, Merriman might not be able to abuse this power without violating his fiduciary duties.

**25.** 374 P.2d at 416.

**26.** *Id.*

of a substantial conflict of interest caused by undue influence in this case.

c. *The superior court did not give undue weight to the fact that the will designated Merriman as the personal representative.*

[redacted] As a subsidiary argument, the plaintiffs impliedly claim that the superior court gave undue weight to the fact that the will designates Merriman as the personal representative. Merriman notes that the superior court, in designating him as the personal representative, was merely following AS 13.16.065, which states that the testator's preference is given priority.

This dispute is largely irrelevant because AS 13.16.065 by its own terms applies only to the *appointment* of a personal representative in the first instance, and not to the subsequent removal of that representative. The superior court only mentions AS 13.16.065 in passing, and the court correctly noted that the standard to be applied for removal is the "best interests" of the estate. Because the removal of a previously appointed personal representative is what is at issue here, we decline to consider this argument any further.

B. *Hostility Between Merriman and the Plaintiffs Does Not Require Merriman's Removal.*

[redacted] The plaintiffs claim that removal is also required because of the hostility that has developed between Merriman and the plaintiffs. Merriman claims that there is actually no evidence at all of hostility, and the superior court agreed:

> The mere fact that the Petitioners are unhappy with their mother's choice for a personal representative, does not warrant removing Merriman as personal representative. Aside from the present matter before the court, there is no evidence of any hostility between the Petitioners and Merriman or that Merriman will be unable to carry out his duties as personal representative and trustee. To find otherwise, would allow the beneficiaries of an estate to select a personal representative in contravention of the testator's wishes.

The trial court's finding in this regard is not clearly erroneous. Moreover, any hostility between the Merrimans and the Helgasons would presumably affect the trust relationship between Merriman, the trustee, and the plaintiffs, as beneficiaries. Yet, the plaintiffs do not challenge Merriman's status as trustee. Therefore, the alleged hostility is not a basis for removal of Merriman as personal representative of the estate.

V. *CONCLUSION*

Because it was not an abuse of discretion to find that the plaintiffs failed to either raise a real issue of a substantial conflict of interest, or show any hostility between the parties relevant to Thomas Merriman's status as personal representative, we AFFIRM the superior court's decision to retain Thomas Merriman as the personal representative of the estate of Clara Helgason.

CARPENETI, Justice, not participating.