No. 347            May 30, 2024            745

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Estate of
Robert Lee Eberhard, Deceased.

Holly L. Eberhard MALONEY,
as beneficiary of the
Estate of Robert Lee Eberhard,
*Petitioner-Respondent,*

*v.*

Ronald L. BRYANT,
as Personal Representative of the
Estate of Robert Lee Eberhard,
*Respondent-Appellant.*

Deschutes County Circuit Court
17PB07766; A176349

Raymond D. Crutchley, Judge.

Argued and submitted January 11, 2023.

Nathan G. Steele argued the cause for appellant. Also on the briefs was The Steele Law Firm, P. C.

Megan K. Burgess argued the cause for respondent. Also on the brief was Peterkin Burgess.

Before Ortega, Presiding Judge, and Lagesen, Chief Judge, and Powers, Judge.

POWERS, J.

Affirmed.

## POWERS, J.

In this probate proceeding, respondent Ronald Bryant appeals from an order removing him as the personal representative of decedent's estate, a limited judgment appointing his successor, and an order denying his ORCP 71 motion for relief from the above-described order and limited judgment. He raises three assignments of error in which he argues that the trial court abused its discretion when it (1) cut short his testimony on direct examination, (2) removed him as the personal representative, and (3) denied his ORCP 71 motion. As explained below, we are not persuaded that Bryant's first two arguments merit reversal, and we conclude that the order denying his ORCP 71 motion is not appealable. Accordingly, we affirm.

## I.  STANDARD OF REVIEW AND BACKGROUND

Although Bryant requests *de novo* review, we decline to exercise our discretion to do so because this case does not present exceptional circumstances justifying that standard. *See* ORS 19.415(3)(b) (describing discretionary *de novo* review); ORAP 5.40(8)(c) (explaining that we exercise *de novo* review "only in exceptional cases"); ORAP 5.40(8)(d) (outlining nonexclusive list of criteria relevant to whether we will exercise our discretionary authority to review *de novo*). Therefore, we are bound by the trial court's factual findings if there is any evidence to support them. *Lynch v. Romano*, 285 Or App 243, 244, 396 P3d 267, *rev den*, 361 Or 800 (2017). In the absence of express factual findings, "we assume that the trial court found the facts in a manner consistent with its ultimate conclusion." *Coates and Coates*, 318 Or App 772, 773, 508 P3d 59 (2022) (internal quotation marks omitted). We summarize the facts accordingly.

A.  *Historical Facts*

Bryant and decedent, Robert Eberhard, were close friends, and Bryant served as decedent's lawyer and business partner. Through the years, Bryant drafted various iterations of decedent's will and those of his wife, Kaye Eberhard. Decedent and Eberhard had one surviving child, Holly Maloney (petitioner), and one grandchild, J.D. (Maloney's son). The operative wills for both decedent and

Eberhard nominated Bryant to act as the personal representative of their respective estates and appointed him as the trustee of all the trusts created by the wills.

Prior to Eberhard's death, the wills and codicils for decedent and Eberhard each contained provisions that allowed the surviving spouse to disclaim any portion of the predeceased spouse's assets. Those disclaimed assets would pass to a credit shelter trust. Upon the death of the surviving spouse, the credit shelter trust would terminate and distribute $100,000 to J.D.'s trust and the remainder to Maloney's trust. Alternatively, if the disclaimer provisions were inapplicable (either because both spouses died contemporaneously or because the other spouse had already died), the codicils provided a bequest of $100,000 to the J.D. Trust and of all remaining property to the Maloney trust. In short, the wills and codicils contemplated that the J.D. Trust would receive a total of $200,000 and the Maloney trust would receive the remainder.

Eberhard died before decedent in 2016, and decedent disclaimed some of her assets for tax purposes. Those disclaimed assets passed to a credit shelter trust, which Bryant served as the named trustee.

In the wake of Eberhard's death, decedent asked Bryant to draft a new will. That will omits, among other provisions, the disclaimer provision (which was no longer applicable since Eberhard had predeceased decedent) and the bequest of $100,000 to the J.D. Trust.

Decedent died testate in 2017, which triggered the termination of the credit shelter trust. Bryant incorrectly distributed the credit shelter trust's assets. Specifically, he distributed all the assets to the Maloney trust and did not distribute anything to the J.D. Trust. Not only did Bryant fail to distribute the credit shelter trust's assets correctly, but he also filed with the court a petition for partial distribution from decedent's estate to the J.D. Trust, declaring that the J.D. Trust was a beneficiary of decedent's will and that a $100,000 distribution from decedent's estate to the J.D. Trust "can be made at this time." However, decedent's

operative will no longer contained any such bequest to the J.D. Trust.[1]

When Maloney asked Bryant about the mistaken distribution to the J.D. Trust, Bryant's attorney sent a letter explaining that Bryant had mistakenly omitted the $100,000 bequest to the J.D. Trust from decedent's will.[2]

B.  *Procedural Facts*

Petitioner Maloney sought to remove Bryant as personal representative. On March 25, 2021, the parties appeared for a hearing on the petition to remove Bryant as personal representative, and Maloney called her first witness in the afternoon. The court informed the parties that they needed to finish by 4:30 p.m., and Bryant raised concerns about the lack of time. The trial court told the parties to be "expeditious with your time." Despite the court's initial refusal to allow the hearing to continue to the next day, the court eventually told Maloney to conclude her case by the end of the day so that Bryant would have the following morning to put on his case.

The following morning, Bryant called two witnesses before he testified himself. In the middle of his own direct examination, the parties had run out of time and the court cut the examination short, allowing only a brief cross-examination and redirect. Bryant argued that he should have more time to complete his case, and the court instructed the parties to schedule a new date.

Almost two months later, the hearing continued before the same judge on May 18, 2021. Bryant sought to resume his testimony on direct examination. Maloney objected, asserting that she had already completed her cross-examination. Bryant reminded the court that his direct examination had been cut short due to scheduling issues and argued that fairness required that he be allowed to continue his direct examination. The court denied the

_____

[1] Bryant testified that he mistakenly believed that the J.D. Trust was supposed to be funded out of decedent's estate.

[2] Bryant testified that his attorney's letter was mistaken and that it was decedent's intent to remove the bequest to the J.D. Trust from his will because Eberhard and decedent only ever intended to bequeath a total of $100,000 to the J.D. Trust.

request, explaining that its notes reflected that Bryant had already completed his direct examination. Importantly, the court did allow Bryant to continue his redirect examination.

The trial court ultimately granted the petition to remove Bryant as personal representative of decedent's estate and appointed a successor. The court explained that there was good cause for the removal because the potential for a malpractice claim against Bryant arising from a potential mistake in drafting decedent's will created a conflict of interest. *See* ORS 113.195(4) (authorizing a probate court to remove a personal representative for "good cause").

About two months later, Bryant filed an ORCP 71 motion to set aside the order removing him as personal representative and the limited judgment appointing a successor. In what effectively was a motion for reconsideration, he argued that relief from the order and limited judgment was merited because they were premised on a "mistake." *See* ORCP 71 B(1) (allowing a court to grant relief from a judgment on the grounds of "mistake, inadvertence, surprise, or excusable neglect"). He primarily relied on arguments previously made to the court, which were bolstered by additional evidence, to establish that "mistake." The trial court denied the motion.

## II. ANALYSIS

On appeal, Bryant assigns error to three rulings: (1) the trial court's refusal to allow him to continue his direct examination at the May 18 hearing, (2) the court's removal of Bryant as personal representative, and (3) the denial of his ORCP 71 motion. We address each in turn.

A. *The Trial Court's Refusal to Allow Bryant to Continue Direct Examination*

In his first assignment of error, Bryant argues that the trial court abused its discretion in refusing to allow him to resume his own direct examination at the May 18 hearing. He asserts that a court's discretionary control over the presentation of evidence must be exercised to allow for the effective ascertainment of truth, which in turn requires the court to afford parties a reasonable time to present their case. Absent a legal determination that evidence will be

cumulative or irrelevant, Bryant argues that a court may not cut short a party's case. *See State v. Pierce*, 307 Or App 429, 433-34, 477 P3d 437 (2020) (explaining that a court's discretionary control over the presentation of evidence should further the ascertainment of the truth, unless offset by the need to protect witnesses from harassment or to avoid needless consumption of time).

We need not reach the merits of Bryant's argument, however, because we conclude that, even assuming that the trial court abused its discretion, Bryant failed to demonstrate that the error was not harmless. *See* Or Const Art VII (Amended), § 3 (requiring affirmance despite error if the judgment "appealed from was such as should have been rendered in the case"); *State v. Garcia*, 284 Or App 357, 363, 392 P3d 815, *rev den*, 361 Or 645 (2017) (explaining that we will affirm despite error if "there is little likelihood that the error *** substantially affected the [appellant's] rights").

First, the exclusion of evidence is not presumed to be prejudicial. OEC 103(1). To establish prejudice, an appellant must establish that "the substance of the [excluded] evidence was made known to the court by offer or was apparent from the context within which questions were asked." OEC 103(1)(b); *see, e.g.*, *State v. Krieger*, 291 Or App 450, 457, 422 P3d 300, *rev den*, 363 Or 599 (2018) (observing that we will not presume harmfulness in the absence of an offer of proof). Here, Bryant assigns error to the exclusion of a portion of his own direct examination. Yet, at the time of the trial court's ruling, he did not make an offer of proof as to the nature of the evidence excluded. *See State v. Phillips*, 314 Or 460, 466, 840 P2d 666 (1992) ("One method of making an offer of proof is by question and answer. It also is acceptable, however, for a party's counsel to state what the proposed evidence is expected to be."). For that reason alone, the record is insufficient to establish that the error was not harmless.

Second, even if the lack of an offer of proof was not determinative and we could accept the representations that Bryant makes on appeal as to the nature of the excluded evidence (specifically, that Bryant was prevented from testifying that decedent never intended the J.D. Trust to get more than a total of $100,000 from his and Eberhard's

estates), we would still find that any error was harmless. That is because evidence of decedent's intentional removal of the bequest to the J.D. Trust would have been admissible on redirect had Bryant offered it.

In discussing the scope of redirect examination, we have observed, "Redirect may extend to the facts elicited on cross-examination; matters that tend to limit, explain, or qualify them; or matters that tend to rebut or modify any inference resulting from the cross-examination—provided that the inquiries are directly connected with the matter stated in cross-examination." *State v. Wirfs*, 250 Or App 269, 275, 281 P3d 616, *rev den*, 352 Or 378 (2012). Here, Maloney's cross-examination of Bryant delved into Bryant's decision to distribute $100,000 to the J.D. Trust from decedent's estate, even though decedent's will did not authorize that distribution. In response to that questioning, Bryant explained that he was surprised to find that decedent's will did not authorize that distribution because he "didn't realize that that portion had been taken out of the will." At least one inference from that line of questing is that Bryant erroneously removed the provision related to the $100,000 distribution from decedent's will. Therefore, testimony that decedent asked Bryant to remove the bequest to the J.D. Trust from the will would have been admissible on redirect examination to rebut that inference. And there is no suggestion in the record that the trial court would have excluded such testimony on redirect.

In short, Bryant fails to establish on appeal that it was the court's truncation of his direct examination that resulted in the absence of that evidence and not simply his failure to offer that evidence on redirect. Indeed, an offer of proof would have removed any ambiguity on this point. Accordingly, because we are unable to identify any harm that resulted from the trial court's ruling, we reject Bryant's first assignment of error.

B.   *Removal of Bryant as Personal Representative Based on a Finding of a Conflict of Interest*

As noted earlier, Maloney filed a petition to remove Bryant as personal representative in which she alleged that that there was "good cause" to do so. *See* ORS 113.195(4)

(authorizing the removal of a personal representative for "good cause shown"). The trial court agreed, concluding that Bryant had a conflict of interest because the estate could potentially bring a malpractice claim against him as the drafter of decedent's will based on evidence that he had mistakenly omitted the bequest to the J.D. Trust when he revised the will. Explaining its ruling, the court observed:

> "Here, [Bryant] was the drafter of the decedent's will. It appears he eliminated a provision from the will that the decedent may have intended to keep in the will. [Bryant] assumed the provision was still in the will during its administration and made a distribution from the estate to a non-beneficiary. Although [Bryant's] actions here may not have been done in bad faith or with a selfish motive, the Court recognizes that this issue creates a conflict under [Oregon Rule of Professional Conduct (ORPC) 1.7(a)(2)].[3]

> "The administration of the estate appears close to being finalized; however, having knowledge of the conflict issue, the Court cannot simply look away or turn a blind eye. Consequently, the Court orders the removal of [Bryant] as the personal representative pursuant to ORS 113.195(4)."

In his second assignment of error, Bryant challenges that ruling, primarily focusing on the sufficiency of the trial court's explanation for its ruling. For instance, Bryant's contends that the court "did not identify the 'conflict of interest' giving rise to" his removal as personal representative. We also understand Bryant to assert that the record does not support a finding of a conflict of interest. In his view, there was no basis for the trial court to find a bona fide conflict of interest based on allegations that he mistakenly omitted the $100,000 bequest to the J.D. Trust from decedent's will. That is because the evidence, in his view, established that decedent intended to remove that bequest from the will. Maloney responds that the court was under no obligation to make special findings and that its ruling was supported by sufficient evidence in the record.

---

[3] Although the transcript cites "ORCP 17 A(2)," it appears likely that the trial court was referring to ORCP 1.7(a)(2), which defines a current conflict of interests to include situations in which "there is a significant risk that the representations of one or more clients will be materially limited *** by a personal interest of the lawyer."

We review the removal of a personal representative for abuse of discretion. *Warkentin v. Shirey*, 308 Or App 1, 9, 480 P3d 289 (2020), *adh'd to as modified on recons*, 309 Or App 314, 481 P3d 444 (2021). Generally stated, "discretion" refers to the trial court's authority "to reach a decision that falls within a permissible range of legally correct outcomes." *State v. Harrell/Wilson*, 353 Or 247, 254, 297 P3d 461 (2012). A court abuses its discretion if it makes a decision that is "guided by the wrong substantive standard," or that is "based on predicate legal conclusions that are erroneous or predicate factual determinations that lack sufficient evidentiary support." *Espinoza v. Evergreen Helicopters, Inc.*, 359 Or 63, 116-17, 376 P3d 960 (2016).

First, even assuming without deciding that the trial court was required to give a detailed explanation of its ruling, the trial court's explanation was adequate. The court explained that the "good cause" for removing Bryant as personal representative was the existence of a conflict of interest. And, understood in the context of the evidence presented at the hearing, the court identified that conflict of interest as one arising from allegations that Bryant mistakenly removed the $100,000 bequest to the J.D. Trust from decedent's will, which gave rise to a potential malpractice claim against Bryant.

Second, we conclude that the trial court's decision was within the permissible range of legally correct outcomes. As noted earlier, ORS 113.195(4) grants a court discretion to remove a personal representative for "other good cause shown." We have construed that phrase broadly to allow a "court in its discretion to remove a personal representative to prevent problems from arising in the probate, including discord between the personal representative and the beneficiaries of the estate." *Warkentin*, 308 Or App at 8.

Although it was decided before ORS 113.195 included "good cause" as a statutory basis for removal, *Wharff v. Rohrback*, 152 Or App 68, 952 P2d 87 (1998), is instructive. In that case, the mother of the decedent was appointed as the decedent's personal representative. *Id.* at 70. The decedent died in a car crash, during which the mother was the driver of the car. *Id.* The only asset of the estate was a wrongful

death claim brought against the driver of the truck that hit the mother's car and caused the decedent's death. *Id*. The beneficiary of the decedent's estate petitioned to remove the mother as personal representative because the mother may have shared some measure of culpability for the crash, and the mother could not objectively evaluate whether to bring a separate claim against herself. *Id*. at 71. The trial court denied the petition, and the beneficiary appealed. *Id*. at 72.

On appeal, we held that the trial court abused its discretion. *Id*. at 74. We observed that a personal representative has "a fiduciary duty to the beneficiaries of the estate" and "must be in a position to act indifferently in matters of the estate." *Id*. at 72. A conflict of interest between the interests of the personal representative in their personal capacity and the interest of the estate "may be a basis to remove a personal representative." *Id*. The question is "whether there is a substantial and bona fide claim of interest in the estate adverse to the interest of the personal representative." *Id*. Although the mother argued that there was insufficient evidence to establish a bona fide claim of her comparative fault for the crash, we explained that that argument missed the point:

> "Although a jury might conclude that [the mother] was completely without fault, there is also sufficient evidence to create a real issue as to whether, and to what degree, [the mother] might be liable for the accident. It is that evidence—that [the mother], necessarily, cannot objectively assess—that gives rise to the conflict."

*Id*. at 73 (emphasis omitted).

Bryant's argument—*i.e.*, that there was insufficient evidence that he mistakenly omitted the $100,000 bequest to the J.D. Trust from decedent's will—similarly focuses on the wrong issue. His argument rests on the credibility of his own testimony about decedent's wishes to establish that he did not make a mistake drafting decedent's will. However, whether his testimony could establish a valid and effective defense against a claim of malpractice is immaterial in this context. There is sufficient evidence under our standard of review to sustain the trial court's finding of a conflict of interest because there was some evidence in the record that Bryant had made a mistake drafting decedent's will. As a

result, Bryant was not in a position to objectively assess the strength of the estate's potential malpractice claim against him. Regardless of the relative merits of such a claim, a conflict of interest arose from the mere fact that Bryant could not be disinterested in evaluating the strength of the claim. Therefore, we conclude that the trial court did not abuse its discretion in removing Bryant as personal representative for "good cause shown."

C.   *Appealability of Order Denying Bryant's ORCP 71 Motion*

In his third assignment of error, Bryant challenges the denial of his ORCP 71 motion. About two months after his removal as personal representative, Bryant filed an ORCP 71 motion to set aside the order removing him as personal representative and the limited judgment appointing a successor, arguing that they were based on a "mistake." The trial court entered an order denying the motion. We need not discuss any details of that order or the parties' arguments on appeal because we conclude that the order denying the ORCP 71 motion is not appealable.

As an initial matter, although the parties do not dispute appealability, "we have an independent obligation to consider matters concerning jurisdiction *sua sponte*." *Hanley Engineering v. Weitz & Company*, 321 Or App 323, 325, 516 P3d 1192 (2022) (quoting *Walton v. Board of Parole*, 267 Or App 673, 676, 341 P3d 828 (2014)).

Governing the appealability of orders in civil cases, ORS 19.205 provides, in part:

"(2)  An order in an action that affects a substantial right, and that effectively determines the action so as to prevent a judgment in the action, may be appealed in the same manner as provided in this chapter for judgments.

"(3)  An order that is made in the action after a general judgment is entered and that affects a substantial right, including an order granting a new trial, may be appealed in the same manner as provided in this chapter for judgments."

Subsection (2) governs orders entered prior to a general judgment, and subsection (3) governs orders entered after a general judgment.

The order denying Bryant's ORCP 71 motion was entered before the entry of a general judgment. Therefore, the question is whether the order is appealable under ORS 19.205(2).

We begin with the substantial-right requirement in ORS 19.205(2). The removal or appointment of a personal representative "affects [a] substantial right[ ]." *Amundson v. Brookshire*, 133 Or App 450, 453, 891 P2d 710 (1995) (addressing a prior version of ORS 19.205). Therefore, we conclude that the denial of Bryant's motion for relief from an order removing him as personal representative satisfies the substantial-right requirement. *See id.* (explaining that "an order replacing a personal representative" is appealable, because it "effectively determines the proceeding as to that person and prevents entry of a judgment or decree as to that person in his or her capacity as personal representative").

The remaining question is whether the denial of Bryant's ORCP 71 motion "effectively determine[d] the action so as to prevent a judgment in the action." We note that it is sufficient to establish appealability of an order under ORS 19.205(2) if the order precludes the entry of judgment as to at least one party. *Assisted Living Concepts, Inc. v. Fellows*, 244 Or App 475, 480-81, 260 P3d 726 (2011). Consequently, the inquiry reduces to whether the denial of Bryant's ORCP 71 motion "effectively determine[d] the proceeding so as to prevent a judgment" as to Bryant.

The answer is no. The denial of the ORCP 71 motion did not determine the proceeding so as to prevent a judgment because it was the earlier order removing Bryant as personal representative and the limited judgment appointing a successor that fulfilled that function. Bryant's ORCP 71 motion sought relief from that order and the limited judgment—the denial of that motion simply maintained the status quo. Thus, the denial of his ORCP 71 motion did not "effectively determine the action" in any manner that was not already accomplished by the earlier order removing him as personal representative. Accordingly, although we have jurisdiction over Bryant's appeal of the order removing him as personal representative and the limited judgment

appointing his successor, we do not have jurisdiction over an appeal from the order denying his ORCP 71 motion.

Affirmed.