**Mary GIBSON, Appellant,**

v.

**GEICO GENERAL INSURANCE COMPANY, Appellee.**

**No. S–12109.**

Supreme Court of Alaska.

March 2, 2007.

---

Michaela Kelley Canterbury, Kelley & Canterbury, LLC, Anchorage, for Appellant.

Susan D. Mack, Call Hanson & Kell, P.C., Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and BRYNER, Justices.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

GEICO refused to pay on Mary Gibson's underinsured motorist policy, claiming that her damages did not exceed $50,000 and therefore were not high enough to trigger her policy. Gibson sued GEICO, and a jury determined that her damages amounted to $68,611. Gibson appeals several of the superior court's determinations, namely: preventing her from deposing two GEICO employees, preventing a GEICO employee from testifying at trial, improperly identifying GEICO to the jury, offsetting the jury verdict, inappropriately calculating attorney's fees and prejudgment interest, and refusing to review the clerk's cost determination. Perceiving no error, we affirm.

## II. FACTS AND PROCEEDINGS

Mary Gibson was injured when Mary Kudlacik drove through a stop light and hit Gibson's car. Both Gibson and Kudlacik were covered by GEICO insurance. Gibson offered to settle for Kudlacik's policy limits of $50,000, and this was accepted. Gibson received the $50,000 facial policy limits of Kudlacik's policy, plus $12,747.89 in add-ons for a total of $62,747.89. Gibson informed GEICO that the policy limits settlement would trigger an underinsured motorist (UIM) claim under Gibson's policy. Gibson appears to have requested policy limits under her UIM coverage. GEICO rejected the policy limits

demand and declined arbitration. Gibson demanded arbitration, which GEICO again declined.

Gibson then filed a complaint against GEICO in superior court requesting (1) recognition of her UIM claim, (2) a court-tried case, (3) damages for her injuries, and (4) attorney's fees, interest, and costs. Gibson's complaint did not allege bad faith on the part of GEICO. GEICO denied the magnitude of Gibson's injuries and asserted that Kudlacik was not an underinsured driver because Gibson's injuries did not exceed the $50,000 policy limits she received under Kudlacik's policy. GEICO demanded a jury trial, which the superior court granted over Gibson's opposition and cross-motion for a court-tried case.

The parties proceeded with discovery. Gibson sought to depose two GEICO employees, Sue Smith and Michael Lina. Lina was identified in GEICO's Civil Rule 26(a)(1) initial disclosures as a person likely to have discoverable information, and Smith was listed on GEICO's preliminary witness list. GEICO moved for a protective order pursuant to Civil Rule 26(c) preventing Gibson's attempts to depose its two employees, arguing that Gibson's motive was to "harass, annoy and burden GEICO employees" by seeking irrelevant and inadmissible testimony. Gibson opposed the protective order motion and moved to compel the depositions. The court heard oral argument on GEICO's motion for a protective order and Gibson's motion to compel.

At oral argument, the court decided that the case would

> look at trial ... just as any auto injury case would. Here are our medical bills. The jury is not going to know what has been paid up to date, what insurance policy limits are, that there are two carriers. None of that is relevant to their determination, and all of it tends in fact to corrupt their determination, which is ... what ... this auto accident is worth.... So I'm going to deny any discovery which goes beyond what happened in the case.... [Plaintiff's attorney can call] plaintiff, oc-

currence witnesses, doctors, an economist, if he wishes, and then we're done.

Basically, the court appears to have denied Gibson's motion to compel on the grounds that Smith and Lina did not possess information relevant to the issues before the jury; that is, they possessed no relevant information regarding Gibson's damages.

Gibson then subpoenaed Lina to testify at trial. GEICO filed a motion to quash the subpoena based on the court's ruling in response to Gibson's motion to compel Lina's deposition. The court issued an order stating that Lina would not testify at trial unless Gibson could demonstrate that he had "admissible testimony to offer as to disputed facts." The only facts being disputed, of course, were those surrounding the extent of Gibson's damages.

Gibson then sought an order establishing the law of the case. Specifically, Gibson argued that the court's orders impermissibly redacted GEICO's role from the proceedings. GEICO responded that it should not be identified as an "underinsured" carrier because that would be tantamount to disclosing the underlying settlement, and that "the adjusters' analysis of the case, terms of the insurance policy, the underlying settlement for policy limits, settlement discussions and the amount of coverage available in the UIM policy are irrelevant to [Gibson's] damages."

The court denied Gibson's rule of law motion, stating that the matter had already been argued and explaining that "revealing the fact and amount of the insurance settlement" had the propensity to suggest to the jury the appropriate range of damages awards. Ultimately, Lina did not testify at trial.

The jury found that Gibson had suffered $68,611 in damages as a result of the collision.[1] GEICO moved for entry of final judgment, requesting an offset for Gibson's receipt of the $50,000 policy limits settlement from Kudlacik and requesting Rule 82 attorney's fees as the prevailing party. Gibson moved for entry of final judgment on the entire $68,611 award and requested attor-

---

1. Shortly before trial GEICO made an offer of judgment under Civil Rule 68 to settle the case for $15,000 plus prejudgment interest, costs, and attorney's fees. Gibson did not accept this offer.

ney's fees, costs, and prejudgment interest on that amount. Gibson also requested an upward variance from the Rule 82 attorney fee schedule and asserted that GEICO had failed to establish a right to set off Gibson's receipt of the $50,000 policy limits settlement from Kudlacik. GEICO objected to Gibson's request.

The court reduced the $68,611 award by $50,000, the "principal amount received from Underinsured driver, Mary Kudlacik." The court calculated prejudgment interest and attorney's fees based on the reduced award.

Gibson requested costs in the amount of $6,794.35. GEICO objected to a cost bill in excess of $2,717.62 for a variety of reasons. The Chief Deputy Clerk of Court awarded Gibson costs of $3,446.65. Gibson moved for review of the clerk's award. The court refused to review the clerk's decision because Gibson failed to "defend her filing by producing receipts to the clerk or addressing [GEICO's] arguments."

Gibson now appeals.

## III. DISCUSSION

### A. Did the Superior Court Abuse Its Discretion by Prohibiting Gibson from Deposing Lina and Smith?

■ This court reviews a trial court's discovery rulings for abuse of discretion.[2] This court exercises its independent judgment when interpreting a civil rule.[3] Gibson argues that the Alaska Rules of Civil Procedure permitted the deposition of Lina and Smith, that deposing them would likely have led to discovery of admissible evidence, and that Gibson was prejudiced by the court's limitations. GEICO argues that Lina's and Smith's "mental impressions" were not "relevant or likely to lead to relevant eviden[ce]."

Gibson cites Civil Rule 30, which permits a party to depose any person without leave of court. Gibson does not mention Civil Rule 26(b). Civil Rule 26(b)(1) sets the default

scope of discovery to "any matter, not privileged which is relevant to the subject matter involved in the pending action." Gibson concedes that "[t]he only issue of material fact to be litigated at trial was the extent of damages Gibson sustained in the 3/13/01 car wreck." Gibson argues that because Lina and Smith investigated her claims, their testimony is relevant to the issue of damages. GEICO takes the position that the adjustors' evaluations of Gibson's damages are irrelevant to Gibson's damages and therefore not within the scope of discovery. The court indicated as much, stating that it would "manage this case as a . . . personal injury case to ascertain what the money damages are . . . [not as] a broad based bad faith case where we need to get into manuals and the heads of adjusters." Since Smith and Lina had no personal knowledge about the extent of Gibson's injuries, and insurer bad faith was not an issue, we are not persuaded that the court abused its discretion by determining that the information they could provide at deposition was not "relevant to the subject matter involved in the pending action" and therefore beyond the scope of discovery.[4]

■ Civil Rule 26(b)(2) permits the court to limit the scope of discovery pursuant to a motion for a protective order like the one brought by GEICO. Discovery may be limited because evidence is "unreasonably cumulative or duplicative, or . . . obtainable from some other source that is more convenient, less burdensome, or less expensive"[5] or because "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account . . . the importance of the proposed discovery in resolving the issues."[6] Even if deposing the claims adjustors might have led to some information on damages, the likely benefit of such information seems small given the availability of medical records and testimony. Gibson does not assert that the adjustors possessed personal knowledge about her damages. Since the relevant infor-

2. *Fletcher v. S. Peninsula Hosp.*, 71 P.3d 833, 844 (Alaska 2003).

3. *S.S.M. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 3 P.3d 342, 344 (Alaska 2000).

4. Alaska R. Civ. P. 26(b)(1).

5. Alaska R. Civ. P. 26(b)(2)(I).

6. Alaska R. Civ. P. 26(b)(2)(iii).

mation the adjusters had was obtainable from other sources and the bulk of their testimony was likely to be tangential to the issue of damages, a conclusion that the burden of the discovery outweighed its likely benefit would have been within the court's discretion.

### B. Did the Superior Court Abuse Its Discretion by Ruling that Lina Would Not Testify at Trial?

■ "The appropriate standard of review for evidentiary decisions is abuse of discretion." [7] The court ruled that Lina would not testify at trial unless Gibson could demonstrate that he had "admissible testimony to offer as to disputed facts." Under the court's analysis, Gibson's grounds for subpoenaing Lina to testify did "not raise disputed issues of material fact."

■ In Gibson's opposition to GEICO's motion to quash the subpoena of Lina, Gibson stated that Lina's testimony was

> relevant to the facts of the tortfeasors insurance liability amount, the fact of settlement for the liability policy, the terms of the insurance contract between [Gibson] and [GEICO] that is the basis of this lawsuit, the basis of GEICO's denial of [Gibson's] complaint against GEICO, GEICO's investigation to the extent of injuries [Gibson] sustained in the subject car wreck, [Gibson's] credibility and [GEICO's] credibility.

Basically, Lina would testify as to the insurance contract and the insurance settlement.

Gibson suggests that the court determined that Lina's testimony would be inadmissible under Evidence Rule 411, which disallows evidence of insurance to show negligence but not for other purposes. The court's order is more appropriately grounded in Evidence Rule 403, which permits exclusion of relevant evidence where, among other things, "its probative value is outweighed by the danger of unfair prejudice." In its order denying Gib-

son's rule of law motion, the court cited *Central Bering Sea Fishermen's Ass'n v. Anderson,*[8] a wrongful termination and defamation case brought by a former employee of Central Bering Sea. The jury awarded the plaintiff punitive damages on her defamation claim.[9] Central Bering Sea appealed, arguing, among other things, that the superior court erred by instructing the jury on the existence and amount of the statutory punitive damages cap.[10] This court agreed with Central Bering Sea, holding that "[p]utting the caps before the jury carried a substantial risk of suggesting the range of appropriate punitive awards. Moreover, no countervailing benefit could be gained from the instruction." [11]

The superior court appears to have used *Central Bering Sea* as legal support for a Rule 403 analysis. The court concluded that evidence of the insurance settlement, like knowledge of the punitive damages cap, had the propensity to suggest the appropriate range of awards. Evidence of the insurance settlement may have been relevant, but its probative value on the issue of damages was slight. As such, any probative value was easily outweighed by the danger of unfair prejudice that might result from suggesting the appropriate range of damages awards. Therefore, evidence of the insurance settlement was inadmissible under Rule 403. Since Lina would be called to testify as to the insurance settlement, and Gibson failed to demonstrate that Lina would be able to testify as to damages, Lina's testimony was inadmissible under Rule 403.

Gibson also argues that the court's order barring Lina's testimony resulted in the jury being unaware of GEICO's identity and role in the case. However, as is discussed in the next section, the jury knew that GEICO was the defendant and Gibson was the plaintiff. Therefore it knew both the identity of GEICO and its adverse relationship with Gibson.

---

7. *Buster v. Gale,* 866 P.2d 837, 841 n. 9 (Alaska 1994).

8. 54 P.3d 271 (Alaska 2002).

9. *Id.* at 279.

10. *Id.* at 280–81.

11. *Id.* at 281 (footnotes omitted).

## C. Was the Superior Court's Framing of the Case Inappropriate?

■ Gibson makes a more general argument that the superior court improperly limited disclosure of relevant facts to the jury. Gibson argues that the insurance contract was the basis of her claim and therefore it was necessary evidence. Gibson argues that because of the court's limitations on the evidence she presented, she was unable to explain to the jury why the parties were even litigating. Gibson seems to claim that the court's rulings amounted to hiding GEICO's identity from the jury and resulted in "charades in trial[ ]." What she seems to take issue with is the way in which the court framed the case.

Gibson cites a number of Florida cases to support her contention that "failure to advise the jury of GEICO's role in this case is reversible error." GEICO responds that the Florida cases do "not mean that a plaintiff in Florida is entitled to solicit testimony about why the carrier refused to pay policy limits."

Gibson relies principally on *Lamz v. GEICO General Insurance Co.*,[12] although she also cites virtually all of *Lamz's* predecessors and progeny. The Lamzes, the victims of an automobile accident, sued both the driver of the vehicle that injured them and the vehicle's owner.[13] GEICO, the Lamzes' underinsured motorist carrier, was also joined as a defendant.[14] The trial court denied the Lamzes' request to specifically refer to GEICO as a UIM carrier, reasoning that reference to GEICO as the Lamzes' insurance company was sufficient to alert the jury to the position of the parties.[15] The Supreme Court of Florida disagreed, concluding:

Identifying the insurance company as merely a plaintiff's insurer without clarifying the full capacity in which it is being sued does not make the jury fully aware of the underinsured carrier's *posture* in the litigation.... We have made it clear that the jury should know who the parties are, and in this case, the jury was not fully apprised of Geico's specific party status.[16]

Gibson argues that the jury was unaware of GEICO's posture in the litigation reviewed here because the jury did not know that GEICO was Gibson's UIM carrier. *Lamz* and the related cases Gibson cites can be distinguished on the ground that they involved more than two parties. Because there were multiple defendants in *Lamz*, and because GEICO was identified as the Lamzes' insurance carrier, the relationship between GEICO and the other defendants was not clear. The jury might have thought GEICO, as the Lamzes' insurer, had an interest in maximizing the liability of the driver and owner of the vehicle that collided with the Lamzes. In that case GEICO's interests would have been aligned with the Lamzes for the purposes of determining the liability of the tortfeasor. But since GEICO was the Lamzes' UIM carrier, GEICO actually had an interest in minimizing the liability of the other defendants and therefore had interests that were entirely adverse to the Lamzes. The extent of the adversity between parties seems to be what the Supreme Court of Florida meant by the underinsured carrier's "posture." The "charades in trial" to which Gibson refers occur when the interests of the parties are not clear and the jury might not realize that the insurance company's interests are aligned with their co-defendants'. In this case, there is little chance of such confusion. GEICO was the sole defendant. The only disputed issue was the extent of Gibson's damages. It was apparent to the jury that GEICO was trying to minimize Gibson's damages. There is no reasonable possibility that the jury was led to believe that GEICO and Gibson were not completely adverse parties. Thus the Florida court's reasoning in *Lamz* is not applicable in Gibson's case.

## D. Did the Superior Court Abuse Its Discretion by Reducing the Jury Verdict?

■ This court reviews the superior

---

12. 803 So.2d 593 (Fla.2001).

13. *Id.* at 594.

14. *Id.*

15. *Id.*

16. *Id.* at 595–96 (emphasis added).

court's setoff decision de novo.[17] Gibson argues that the superior court improperly reduced the jury verdict by $50,000. Gibson relies on AS 09.17.070, a statutory version of the collateral source rule that allows judges, in certain circumstances, to reduce awards to reflect unsubrogated payments from collateral sources. But AS 09.17.070 does not apply to this situation since payments from a tortfeasor's insurance company are not considered "collateral" payments.[18]

▮ Gibson agrees that "UIM coverage may not duplicate amounts payable under bodily injury coverage." However, Gibson asserts that GEICO failed to show that the amount awarded by the jury duplicates the $50,000 paid by Kudlacik. Gibson argues that "the jury verdict of $68,611 does not contain all of Gibson's past medical expenses, past wage loss, and future damages" and that there was no double recovery because "these uncompensated measures of damages by the jury were included in the funds received from the tortfeaser." Gibson asserts that the offset lacked a factual basis.

The factual basis for a reduction of the jury award was established by Gibson's claim. The thrust of a UIM claim is that the insured suffered some quantifiable amount of damages and that the tortfeasor's insurance covered only a portion of those damages. The reason Gibson sued GEICO was to establish that the entire amount of her damages exceeded the $50,000 payment she had already received. Since the whole point of the trial was to determine the entire amount of damages, it was necessary to reduce the ultimate jury award by $50,000. The special verdict form indicates that the jury determined "the damages suffered by plaintiff . . . as a legal result of the March 13, 2001 automobile collision[.]" The jury was required to enter dollar amounts in each of the following categories: past medical expenses, future medical expenses, past wage loss, future

wage loss, past pain and suffering, future pain and suffering, past emotional distress, future emotional distress, past loss of enjoyment of life, future loss of enjoyment of life, past inconvenience, and future inconvenience. It is unclear exactly what Gibson believes the jury might have overlooked given this comprehensive itemization of all damages from the accident.

**E. Did the Superior Court Abuse Its Discretion by Calculating Prejudgment Interest Based on the Reduced Amount?**

▮ Gibson argues that the superior court should have calculated prejudgment interest based on the jury's finding of total past damages of $64,161. Prejudgment interest is awarded to compensate prevailing plaintiffs for the time value of money. When Gibson received the $50,000 settlement, she received add-ons that included prejudgment interest, compensating her for the difference in value between the $50,000 in damage at the time of the accident and the $50,000 she received at the time of settlement. Since Gibson actually received the $50,000 and was awarded prejudgment interest, she has already been compensated for any loss in value of that portion of her damages that was caused by the passage of time. In any case, GEICO as the UIM carrier was only liable for damages in excess of $50,000. Prejudgment interest was awarded on the excess. We see no error.

**F. Did the Superior Court Abuse Its Discretion by Calculating Attorney's Fees Based on the Reduced Amount?**

▮ An award of attorney's fees is reviewed for abuse of discretion and will not be overturned unless "manifestly unreasonable, arbitrary or designed for a purpose other than justly deserved compensation."[19]

---

17. *Liimatta v. Vest,* 45 P.3d 310, 313 (Alaska 2002).

18. *Chenega Corp. v. Exxon Corp.,* 991 P.2d 769, 790 (Alaska 1999) ("In general, a court will not reduce a tortfeasor's liability to a victim when the victim receives compensation from a collateral source. On the other hand, payments made to the victim from non-collateral sources—such as

the tortfeasor's insurance company or a joint tortfeasor—reduce the tortfeasor's liability.") (footnotes omitted).

19. *Fairbanks Builders, Inc. v. Sandstrom Plumbing & Heating, Inc.,* 555 P.2d 964, 966–67 (Alaska 1976) (footnotes omitted).

Gibson argues that the superior court should have calculated attorney's fees based on the jury's verdict of $68,611 rather than the $18,611 that remained after the superior court reduced the verdict by $50,000. Gibson relies primarily on the language of the collateral source statute, AS 09.17.070, and *Falconer v. Adams*.[20] GEICO argues that the insurance contract limited attorney's fees in UIM cases to the "limit of liability of [UIM] coverage." GEICO also argues that Alaska case law requires attorney's fees to "be based on net, not gross recovery."

In *Falconer* this court was called upon to interpret AS 09.17.070, which, as we have stated above, does not apply.[21] Thus this argument fails.

Gibson also argues that the superior court's award of attorney's fees was an abuse of discretion. Gibson does not allege bad faith and seems to argue that an upward variance would have been reasonable, not that denial of the upward variance was an abuse of discretion. Gibson focuses her argument on GEICO's refusal to arbitrate. Gibson reasons that arbitration keeps costs down and that "[w]hen an insurer forces an expensive forum upon its insured, the costs and risks of implementing that expensive forum should be completely borne by the insurer." Gibson is probably right that arbitration would have been a less expensive way to resolve this case—UIM claims often are arbitrated. Moreover, it is possible that GEICO litigated this case "influenced by considerations apart from the case at bar"—a ground warranting an adjustment in scheduled fees.[22] But this is only hinted at by Gibson, and it is countered by GEICO, which notes that it made an offer of judgment that was only slightly below the jury verdict. On balance, while enhanced fees might have been reasonable, we are unable to conclude that it was an abuse of discretion for the court to refuse to award them.

### G. Did the Superior Court Abuse Its Discretion by Not Reviewing the Clerk's Cost Determination?

This court reviews a trial court's cost determination for an abuse of discretion; "demonstrating an abuse of discretion requires a showing that the award 'was arbitrary, capricious, manifestly unreasonable, or improperly motivated.'"[23]

Gibson argues that the superior court was manifestly unreasonable in upholding without a hearing the clerk's reduction of her costs. Gibson filed a cost statement, GEICO objected to the amount of costs, and Gibson did not respond to GEICO's objections. "After reviewing [Gibson's] cost statement and [GEICO's] opposition," the clerk reduced Gibson's requested cost award. Gibson then filed a motion to review the cost bill, which the court denied, stating:

> [Gibson] did not defend her filing by producing receipts to the clerk or addressing [GEICO's] arguments.... Because she denied the clerk this data, the court will not now review [the clerk's denial] de novo at this time.

Gibson's argument is that the denying of her motion for review of the cost award because she failed to produce receipts to the clerk was error because a party does not have to provide receipts to the clerk unless the clerk specifically requests receipts. But Civil Rule 79(d)(2) states:

> The clerk may deny costs requested by the prevailing party on grounds that ... (2) the party failed to provide ... adequate supporting documentation following a request by the clerk *or another party* [.]

**20.** 974 P.2d 406 (Alaska 1999).

**21.** *Id.* at 411; *see supra* note 18 and accompanying text.

**22.** Civil Rule 82(b)(3)(J) provides:
The court may vary an attorney's fee award calculated under subparagraph (b)(1) or (2) of this rule if, upon consideration of the factors listed below, the court determines a variation is warranted:
. . .

(J) the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer[.]

**23.** *Sourdough Dev. Servs., Inc. v. Riley,* 85 P.3d 463, 466 (Alaska 2004) (quoting *Fernandes v. Portwine,* 56 P.3d 1, 4–5 (Alaska 2002)).

(Emphasis added.) GEICO specifically requested additional supporting documentation. Gibson did not respond with the documentation GEICO requested. The clerk's denial thus was justified under the rule.

 Gibson also challenges several specific cost awards. Gibson appears to believe that GEICO's failure to respond to this section of her opening brief means that GEICO "concedes that Gibson's arguments to this Court require remand to the trial court." That assertion is without merit. An appellee's failure to respond to a particular argument is not a concession as to its validity.[24]

Gibson argues that the clerk improperly denied Lina's subpoena fee on the grounds that the subpoena costs were not necessarily incurred in the action. GEICO requested that process server fees be reduced to $225 (the amount for five subpoenas including mileage) unless Gibson provided an itemized receipt. Gibson did not provide an itemized receipt. Therefore, the clerk did not reduce the fees because the costs were not necessarily incurred, but because Gibson failed to provide adequate supporting documentation following a request by GEICO. As noted above, this ground for denying costs is explicitly allowed under Rule 79(d)(2).

Gibson also argues that it was plain error for the clerk to reduce fees to $225 rather than award her $270 (the amount for six subpoenas including mileage). Because GEICO agreed to an award of $225, and because Gibson failed to provide adequate supporting documentation following a request by GEICO, the reduction was not clearly erroneous.

## IV. CONCLUSION

The superior court did not abuse its discretion by denying Gibson's motion to compel depositions of Smith and Lina or by quashing Gibson's subpoena of Lina. The superior court did not err in failing to advise the jury of GEICO's status as Gibson's UIM carrier because there was no chance of confusion about the posture of the parties. The superi-

or court properly reduced the jury verdict by the amount of Gibson's previous settlement and properly calculated attorney's fees and prejudgment interest based on the reduced amount. The superior court did not abuse its discretion by refusing to review the cost award.

The superior court's judgment is AFFIRMED.

CARPENETI, Justice, not participating.

---

**24.** In fact an appellee's brief is not mandatory in the sense that an appeal will be resolved against an appellee if it does not file a brief. This court has denied relief to appellants in a number of cases in which no appellee's brief was filed. *See,* *e.g., Municipality of Anchorage v. Suzuki,* 41 P.3d 147 (Alaska 2002); *Riddell v. Edwards,* 32 P.3d 4 (Alaska 2001); *Calvo v. Calhoon,* 559 P.2d 111 (Alaska 1977).