NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| In the Matter of the Estate of<br><br>LIONEL D. | )<br>) Supreme Court Nos. S-18008/18087<br>) (Consolidated)<br>)<br>) Superior Court No. 3AN-18-00457 PR<br>)<br>) MEMORANDUM OPINION<br>)     AND JUDGMENT[*]<br>)<br>) No. 1932 – November 30, 2022 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: John C. Pharr, Law Offices of John C. Pharr, P.C., Anchorage, for Cliff D. Cedar E. Polta, Assistant Public Advocate, and James Stinson, Public Advocate, Anchorage, for Nora D. Bruce F. Stanford, Law Offices of Bruce F. Stanford, LLC, Seward, for Kevin W.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I. INTRODUCTION

In this appeal from probate proceedings the primary issues are whether the superior court erred or abused its discretion by denying a request to compel discovery, by removing the estate's personal representative for self-dealing and conflict of interest,

---

[*] Entered under Alaska Appellate Rule 214.

and by approving the successor personal representative's final distribution of the estate. Seeing no error, we affirm the court's orders and the estate's closure.

## II.  BACKGROUND FACTS

Lionel D.[1] died intestate in February 2018.  He had no spouse and no children.  He was survived by his mother, Nora; his siblings, Cliff and Naomi; his nephew, Naomi's son Kevin; and other family members not relevant to these proceedings.  Relevant to the dispute before us, Lionel's estate included a valuable setnet fishing permit and related shore lease.

Having died intestate and without a spouse or descendants, Lionel's entire estate undisputedly passed to one heir — his surviving parent, Nora.[2]  Nora had suffered a stroke in April 2016 resulting in cognitive and mobility impairments, and she had a court-appointed conservator when Lionel died.[3]

---

[1]  We use pseudonyms for all individuals in this case.

[2]  *See* AS 13.12.103 ("[T]he entire intestate estate if there is no surviving spouse, passes . . . if there is no surviving descendant . . . to the surviving parent.").

[3]  After Nora's stroke, Cliff initially had her power of attorney and tried to care for her at her home, where he and at least one sibling were living.  But a short time later he contacted Adult Protective Services (APS) because he and his sibling were unable to provide Nora adequate care.  APS petitioned for guardianship in separate October 2016 proceedings.  In January 2017 — after APS had petitioned for guardianship of Nora — Cliff established a family trust consisting of Nora's real and personal property with himself as grantor and trustee.  The superior court appointed a temporary conservator from the Office of Public Advocacy (OPA) in January 2018 and eliminated Cliff's "power to manage financial affairs."  The conservatorship became permanent on February 10, 2018, the same day Lionel passed away.

## III. INITIAL PROCEEDINGS; PERSONAL REPRESENTATIVE'S ACTIONS

### A. Cliff Became Personal Representative And Fished The Permit.

In March 2018 Cliff sought appointment as personal representative of Lionel's estate. On a form requesting to start informal probate, he failed to list Nora as a person with greater right to appointment. Documents nominating Cliff to serve as personal representative and demanding "notice of all proceedings" regarding Lionel's estate were allegedly filed by Nora; the documents listed an address that was outdated for her but current for Cliff.

Following a July 2018 hearing the superior court appointed Cliff as personal representative of Lionel's estate. The court ordered that Cliff's appointment be supervised and that he could "not make any distribution of the estate . . . without prior order of the court." In September Cliff sought to have the estate's setnet permit and shore lease changed into his own name. He went to the Department of Natural Resources (DNR), the Commercial Fisheries Entry Commission, and the court seeking the assignment. Acknowledging that it would be "in the best interests of the Estate for the [setnet] permit to be fished during the 2019 season," the court instructed Cliff to account for any income derived from fishing the permit. Cliff eventually received an emergency transfer granting a limited entry permit to fish the permit in 2018 and 2019.

Nora's permanent conservator later testified that Cliff had not informed the conservator about Cliff's intent to become the estate's personal representative, about the two documents Nora purportedly filed with the court, or about transferring the fishing permit and shore lease into his name. Cliff did not give the estate any fishing income.

### B. Kevin Successfully Petitioned To Remove Cliff As Personal Representative, To Become Personal Representative, And To Fish The Estate's Permit.

In March 2020 Kevin sought "formal probate . . . , the removal of [Cliff] as Personal Representative of [Lionel's] estate," and appointment as personal representative. In May Kevin also sought an order allowing him to fish the setnet permit and shore lease for the 2020 season. Nora, "by and through her conservator," joined the motion to remove Cliff as personal representative of Lionel's estate.[4] Cliff opposed both of Kevin's motions. The court granted Kevin permission to "fish the estate's limited entry setnet permit and Naknek shore fisheries lease for the 2020 Bristol Bay commercial salmon season."[5]

---

[4] Cliff opposed Nora's effort to join in the removal motion, arguing that the "OPA attorneys represent[ed] the [c]onservator, not Nora" and that Nora had no attorney in the estate proceedings. He makes the same argument on appeal. Nora persuasively responds that under AS 13.16.065(d) "[c]onservators of the estates of protected persons . . . may exercise the same right to nominate, to object to another's appointment, or to participate in determining the preference of a majority in interest of the heirs and devisees that the protected person or ward would have if qualified for appointment." *See also* AS 13.26.540(c); Alaska R. Civ. P. 17 (similar). Cliff's argument that Nora and her conservator each required separate counsel, without offering any evidence suggesting there was a conflict of interest, runs contrary to the plain language of Alaska's statutes and civil rules. We do not consider the issue further.

[5] Cliff argues that the superior court erred by allowing Kevin to fish the 2020 season. Cliff does not suggest that he was injured by this decision or that Kevin acted improperly when he distributed fishing proceeds to the estate for the 2020 season. Nora's former conservator testified that Kevin "adhere[d] to the proposal that was discussed" for allocating proceeds to the estate and that he "follow[ed] through on his commitments." Cliff offers no alternative explanation, and the issue of Kevin fishing the estate in 2020 thus is moot. *See, e.g.*, *In re Reid K.*, 357 P.3d 776, 780 (Alaska 2015) ("A claim is moot if it is no longer a present, live controversy, and the party bringing the action would not be entitled to relief, even if it prevails." (quoting *In re Mark V.*, 324

(continued...)

### 1. Discovery disputes

In October Cliff moved to compel discovery from OPA, Kevin, and Naomi. After Cliff received interrogatory responses concerning negative statements about his actions as Nora's power of attorney and personal representative of Lionel's estate, Cliff had asked OPA to produce any supporting documents. One document OPA produced was redacted to omit what OPA described as "irrelevant information, communications protected by the attorney-client privilege, and attorney work products." Cliff requested an unredacted version of the document; he noted that "[n]o privilege log was supplied" and suggested that the document was strategically redacted to support the conservator's position. He asked the superior court to order OPA to submit a privilege log identifying which privilege applied for the redactions.

Cliff also had asked Kevin and Naomi to produce documents and communications relating to an alleged bribery scheme in which Kevin was to pay Nora $10,000 in exchange for use of, or possibly the ability to buy, the permit and shore lease. They responded that there was no signed written agreement but that Kevin had discussed with OPA that he would pay Nora the greater of either "$10,000 after the 2020 fishing season or" a figure calculated "by subtracting [Nora's] half of the start up expenses from the total income from the 2020 fishing season and then multiply[ing] it by 1/3." Cliff argued in his motion to compel that this payment was suspicious — of what, he did not specify — and that because Kevin's and Naomi's discovery responses were "evasive," they "should be ordered to produce any writings in any form, including but not limited to emails, pertaining to the $10,000 agreement."

---

[5]     (...continued)
P.3d 840, 843 (Alaska 2014))). We do not consider the issue further.

The superior court found "that the discovery responses were adequate, that the privilege claims were sufficiently documented and supported and that there [was] no basis to move to compel."

## 2. Trial

Trial was held over three days in November and December. Cliff testified that in 2018 and 2019 he wanted to put the fishing permit and shore lease in his name so he could transfer them into the family trust he had created for Nora's assets. He said that when he fished those two seasons he received 40% of the proceeds, although he was inconsistent about whether there were any net profits. Cliff explained that he did not know what he was supposed to do with the fishing proceeds. He testified that he spent some of the proceeds "[b]uying things for [Nora]" but spent most of the money on himself. Cliff generally acknowledged that: Nora stood to inherit Lionel's assets, Nora had been under a conservatorship since 2018, his appointment as personal representative was supposed to be supervised, he never informed Nora's conservator about the setnet permit or the shore lease, and he had been informed he "could no longer handle any of [his] mother's financial affairs." He repeatedly asserted that he did not know what his duties as personal representative entailed.

Nora's former temporary conservator testified that when he was first appointed to the case, Nora "was in arrears to her current assisted living home and had been presented a 30-day notice." Yet her funds were being used to pay for a vehicle that was in her name but being used by Cliff, as well as space rent and utilities for a trailer Cliff was living in. The conservator recalled asking Cliff whether Lionel's death would "affect [Nora]'s financial situation," and that in response Cliff failed to mention the setnet permit and shore lease. The conservator explained about not having notice from Cliff when he became Lionel's estate's personal representative, about Cliff transferring the shore lease and setnet permit into his own name, about Cliff receiving fishing

proceeds, and about the two documents purportedly filed on Nora's behalf supporting Cliff's appointment as personal representative.

At the end of trial the superior court found "substantial evidence of self-dealing [by Cliff] and of actions that were detrimental to the estate and inconsistent with [Cliff's] fiduciary obligations as personal representative." The court concluded that Cliff should be removed as personal representative and that Kevin — "the only other option" — should be appointed. The court asked Nora's counsel to "submit proposed findings of fact and conclusions of law" in accord with its oral findings and conclusions and counsel's closing arguments.[6]

### 3. Superior court's written order

The superior court adopted Nora's written proposed findings of fact and conclusions of law largely without alteration. In addition to its oral findings after trial, the court found that Cliff: "committed a fraud upon this court" when he caused Nora to file "a demand for notice and a waiver of bond and priority for appointment . . . in support of Cliff's . . . application to become personal representative"; failed to make necessary disclosures to OPA about the estate; "[b]y his own admission, . . . applied to become [p]ersonal [r]epresentative with the explicit goal of permanently transferring the

---

[6]     Cliff asserts that the superior court impermissibly delegated to Nora the task of proposing findings of fact and conclusions of law. Alaska Civil Rule 78(a) provides generally that a court shall order a successful party to prepare proposed findings of facts and conclusions of law. As we explain below, the record before us supports the proposed findings subsequently approved by the court. And the court made sufficient oral findings following trial demonstrating its "independent view of the weight of the evidence" such that we are able to undertake meaningful appellate review of the issues before us; we see no error with the court's delegation of this responsibility. *See Indus. Indem. Co. v. Wick Constr. Co.*, 680 P.2d 1100, 1108 (Alaska 1984) ("A trial court is . . . entitled to adopt findings and conclusions prepared by counsel, so long as they reflect the court's independent view of the weight of the evidence.").

permit and shore lease into his ownership"; was "ignorant of the distributive obligations of a [p]ersonal [r]epresentative"; "failed to account to this court for the two fishing seasons that he fished," despite grossing "approximately $180,000 over two years," and used the profits "to his own advantage and conveyed no significant benefit to Nora . . . or to this estate"; and "knew that those assets were intended for [Nora]."

The superior court concluded as a matter of law that both probate statutes and our decision in *Helgason v. Merriman* mandate removal of a personal representative when "there is sufficient evidence, such as a potential claim against the representative, that creates a 'real issue' of . . . a substantial conflict of interest."[7] Because the court found that Cliff committed fraud upon the court by presenting filings on Nora's behalf without her conservator's knowledge, that Cliff failed in his duties as personal representative, that the estate had a "viable claim for recovery against Cliff . . . for unlawfully converted profits," and that there was a " 'real issue' of whether or not there is a substantial conflict of interest," the court concluded by clear and convincing evidence that Cliff's removal was mandatory. The court found additional grounds for removing Cliff in light of the above-described violations of his fiduciary duties. The court removed Cliff as personal representative and appointed Kevin to serve instead, subject to court supervision under AS 13.16.215.

---

[7]   36 P.3d 703, 706-07 (Alaska 2001) (quoting *Wharff v. Rohrback*, 952 P.2d 87, 89-90 (Or. App. 1998)).

## IV.  APPEAL ISSUES

### A.  The Superior Court Did Not Abuse Its Discretion By Denying Cliff's Motion To Compel Discovery.[8]

Cliff contends that the superior court erred when it denied his motion to compel discovery from OPA, Kevin, and Naomi. Cliff asserts that under Alaska's liberal discovery standards,[9] OPA's unilateral assertions that some portions of the document were redacted due to irrelevance did not satisfy Alaska Civil Rule 26(b)(1)'s standard for discoverability and that OPA was required to submit a privilege log supporting its privilege claims. We have interpreted Rule 26(b)(1) as permitting "a party to discover all evidence, not privileged, that would be relevant at trial or that 'appears reasonably calculated to lead to the discovery of admissible evidence.' "[10] "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[11] We construe "relevance for purposes of discovery [as] broader than for purposes of trial."[12]

---

[8]  We "review[] a trial court's discovery rulings for abuse of discretion" and "exercise[ our] independent judgment when interpreting a civil rule." *Gibson v. Geico Gen. Ins. Co.*, 153 P.3d 312, 316 (Alaska 2007).

[9]  *See Jones v. Jennings*, 788 P.2d 732, 735 (Alaska 1990) ("In general, the civil rules are committed to a system of liberal pretrial discovery.").

[10]  *Carstens v. Carstens*, 867 P.2d 805, 809 (Alaska 1994) (quoting *Doe v. Alaska Superior Ct.*, 721 P.2d 617, 620 (Alaska 1986)).

[11]  Alaska R. Evid. 401.

[12]  *Lee v. State*, 141 P.3d 342, 347 (Alaska 2006) (quoting *Hazen v. Municipality of Anchorage*, 718 P.2d 456, 461 (Alaska 1986)).

The proceedings primarily concerned removing Cliff as personal representative of Lionel's estate for "malfeasance, breach of fiduciary duty, self-dealing and violation of Probate Court Orders regarding the" fishing and setnet permits. OPA described the allegedly irrelevant information as pertaining "to [Nora]'s finances after the entry of the conservatorship." OPA further explained that the redacted information had "no bearing on whether [Cliff] unlawfully converted estate funds, violated a direct order of the court while acting as Personal Representative, or [was] unqualified to serve due to a lack of understanding or ability to fulfill the responsibilities." Despite Cliff's contention that Nora's "attorney unilaterally decided what was relevant," our legal system entrusts attorneys to make those judgment calls in good faith on their clients' behalf, risking sanctions if they abuse that privilege.[13] It thus was not an abuse of discretion for the court to deny Cliff's motion to compel absent any suggestion beyond Cliff's conclusory statement that the redacted information was relevant to the suit.

Nora also is correct that no formal privilege log is required by the plain text of Rule 26(b)(5). The rule requires only that the claim be expressly made and sufficiently descriptive to "enable other parties to assess the applicability of the privilege or protection."[14] Here OPA repeatedly identified the specific claims of privilege that applied; the documents and OPA's privilege explanations were sufficient for Cliff to determine whether the claims were proper. We have said that a court does not abuse its discretion by denying a motion to compel discovery absent evidence of abuse of the

---

[13] *See* Alaska R. Civ. P. 34, 37 (describing procedures for requesting and producing documents and requesting sanctions if opposing counsel does not comply).

[14] *See* Alaska R. Civ. P. 26(b)(5).

discovery process.[15]  Cliff apparently did not ask for an in camera review of the documents under OPA's claims of privilege, and there seems to be no indication that OPA was abusing the claims.  The superior court did not abuse its discretion when it denied Cliff's motion to compel production against OPA.

Cliff also argues that the court abused its discretion by not ordering Kevin and Naomi to produce evidence of their "corrupt bargain" with OPA in which they allegedly agreed to pay Nora's conservator $10,000 in exchange for letting Kevin fish the permit for the 2020 season.  Kevin and Nora respond that no such agreement existed.  Evidence supports the idea that this "$10,000" value referred to Kevin promising to pay Nora a minimum of $10,000 for the 2020 season if his profits were less than $10,000.  There also was evidence that the alleged "agreement" referred to discussions at a June 2020 hearing and the court's order granting Kevin's request to fish the permit.

We see no abuse of discretion by denying Cliff's motion to compel discovery given that the uncontradicted evidence suggests he ultimately was privy to the actual terms of the agreement reached for Kevin to fish the permit and that nothing about those actual terms suggests a "corrupt bargain."[16]  Requiring more likely would have been both cumulative and irrelevant to issues relating to Cliff's removal as personal representative because he had breached his duties.  Moreover, we can see no prejudice

---

[15]     *See Christensen v. NCH Corp.*, 956 P.2d 468, 473-74 (Alaska 1998) (upholding superior court's denial of motion to compel based on discovery responses providing general nature of withheld documents, basis for withholding them, and "good faith in claiming that they were not subject to discovery" when party seeking to compel provided no support that representation was "incorrect, incomplete, or misleading" or that in camera inspection "was likely to reveal evidence of crime, fraud, or intentional misconduct" or "was necessary to avoid prejudice").

[16]     *See* Alaska R. Civ. P. 26(b)(1), (b)(2)(A)(i) (requiring that requested discovery be "relevant to the subject matter" and limiting discovery that "is unreasonably cumulative or duplicative, or is obtainable from some other source").

to Cliff. He has no financial or other interest in the estate's proceeds from Kevin having fished the permit in 2020.

>    **B.    The Superior Court Made No Clearly Erroneous Factual Findings And Cliff's Removal As Personal Representative Was Mandatory Under The Law.[17]**

Cliff challenges most of the superior court's factual findings[18] as being clearly erroneous and not sufficiently detailed to permit meaningful appellate review.[19] Alaska Statute 13.16.295(b) instructs:

> Cause for removal exists when removal would be in the best interests of the estate, or if [the] personal representative . . . intentionally misrepresented material facts in the proceedings leading to appointment, . . . disregarded an order of the court, . . . or has mismanaged the estate or failed to perform any duty pertaining to the office.

We have held that "[o]nce a 'real issue' of a substantial conflict of interest is raised,

---

[17]    We review factual findings, including those pertaining to witness credibility, for clear error, reversing only when "left with a definite and firm conviction that the trial court has made a mistake." *Rohde v. Rohde*, 507 P.3d 986, 991-92 (Alaska 2022) (quoting *Fredrickson v. Button*, 426 P.3d 1047, 1052 (Alaska 2018)); *see Romero v. Cox*, 166 P.3d 4, 7 (Alaska 2007) (concerning standard of review for witness credibility). "Conflicting evidence is generally not sufficient to overturn a trial court's factual findings, and we will not reweigh evidence when the record provides clear support for the trial court's ruling." *Simone H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 320 P.3d 284, 288 (Alaska 2014).

[18]    Cliff challenges no specific conclusions of law; to the extent he argues that any conclusions of law were erroneous, we find the argument waived for insufficient briefing.

[19]    "Whether there are sufficient findings for informed appellate review is a question of law" which we review de novo. *Horne v. Touhakis*, 356 P.3d 280, 282 (Alaska 2015) (quoting *Hooper v. Hooper*, 188 P.3d 681, 685 (Alaska 2008)). We conclude that the superior court's findings are sufficient to allow for meaningful appellate review.

removal of the personal representative is mandatory and it is an abuse of discretion to deny removal."[20] "[A] potential claim against the representative . . . creates a 'real issue' of whether or not there is a substantial conflict of interest."[21]

Ample evidence supports the court's factual findings and decision to remove Cliff as personal representative. By December 2017 Cliff knew that he no longer had power over Nora's financial affairs and that a conservator had been appointed to assist her. But in March 2018 documents nominating Cliff for appointment as personal representative purportedly were filed by both Cliff and Nora at the same time; as the court noted, Cliff "caus[ing] these filings to be placed before the court. . . . and failing to correct the court's misunderstanding regarding the validity of the[] documents" was "a fraud upon [the] court." Cliff then signed documents accepting personal representative duties, including a fiduciary duty to the estate's beneficiary,[22] Nora. And Cliff's appointment as personal representative was supervised, meaning he was not permitted "to make any distribution of the estate without prior order of the court."[23]

Yet Cliff's own testimony demonstrated a serious lack of understanding, if not an intentional disregard, of his personal representative duties. Cliff repeatedly asserted that he did not know what his personal representative duties were, alone

---

[20] *Helgason v. Merriman*, 36 P.3d 703, 706-07 (Alaska 2001) (quoting *Wharff v. Rohrback*, 952 P.2d 87, 89-90 (Or. App. 1998)).

[21] *Id.* at 706 (quoting *Wharff*, 952 P.2d at 89-90).

[22] *See* AS 13.16.350; *see also Fiduciary*, BLACK'S LAW DICTIONARY (11th ed. 2019) "Someone who is required to act for the benefit of another person on all matters within the scope of their relationship," including "the duties of good faith, loyalty, due care, and disclosure."

[23] *See* AS 13.16.230.

providing sufficient cause for his removal.[24] Cliff additionally acknowledged having been informed by Nora's conservator that his power of attorney over Nora's "financial dealings[] was terminated the day that OPA became [her] conservator" but conceded that he had not informed Nora's conservator about the shore lease or setnet permit. Cliff acknowledged that he had wanted to transfer the fishing permit and shore lease into his name but said that he wanted to then transfer them into a family trust. Transferring these assets would have disregarded the court order to "not make any distribution of the estate" without a court order. But Cliff also testified that the permit and shore lease should go to him because his brother "had no heirs." Cliff failed to seek court approval before asking DNR to assign the permit to his name. And despite having notice of the accounting requirement, he failed to account for any proceeds from fishing the permit. Cliff admitted to not giving Nora's conservator any fishing proceeds and to instead spending most of the money on himself. He also clarified that almost all the proceeds he earned fishing the permit were gone by the time of trial, creating a viable claim for Lionel's estate to recover against Cliff and mandating his removal due to a substantial conflict of interest.[25]

Despite Cliff's suggestions that he was devoted to Nora and that he thought he had her permission to fish the permit, he offers no evidence or serious arguments indicating clear error that would require reversing the superior court's factual findings, much less reversing its decision to remove him as personal representative. We therefore affirm the court's findings and its January 2021 order removing Cliff as personal representative.

---

[24]    *See* AS 13.16.295(b) ("Cause for removal exists when . . . the personal representative has disregarded an order of the court . . . or failed to perform any duty pertaining to the office.").

[25]    *See Helgason v. Merriman*, 36 P.3d 703, 706-07 (Alaska 2001).

**C. The Superior Court Did Not Err By Granting Kevin's Motion To Finalize The Estate.[26]**

Nora's conservator had testified at trial that "a legitimately held value of [Nora's]" is "to preserve the family's assets for . . . subsequent generations." It was undisputed that Nora wished the setnet permit and shore lease to remain in the family, and, after researching the assets' value, Nora's conservator accepted bids from the family. Kevin and Cliff each bid to purchase the permit and lease. The conservator decided that Kevin's plan was "the most viable option that [was] most in line with [Nora's] wishes." Kevin then sought court approval for a final distribution of the estate.

Cliff opposed the motion to finalize the estate, characterizing the bid process as "an obvious charade." Cliff further objected that proceeds from the fishing season were directed to Nora's special needs trust rather than a trust listing Cliff as both grantor and trustee. But Cliff provided the court no legal basis for his objection, no factual evidence about the bid he submitted, and no explanation why selecting Kevin's bid was not in the estate's best interests. Nora and Kevin sought to strike Cliff's motion, arguing that Cliff had "no interest in the distribution of the estate." The court approved the final distribution of the estate without addressing Cliff's opposition or Nora and Kevin's motion to strike.

Cliff contends that we should reverse the superior court's decision to finalize the estate, alleging that Kevin's promissory note was a sham and not aligned with Nora's wishes. Even assuming Cliff were an interested person with standing to challenge the estate's final distribution, his opposition consisted of nothing more than unsubstantiated allegations with no legal argument.

---

[26] In probate cases we review factual findings "under the clearly erroneous standard" and "apply our independent judgment to questions of law." *In re Estate of Johnson*, 119 P.3d 425, 430 (Alaska 2005).

On the record before us we see no error with the court's reliance on the conservator's decision to transfer Nora's interest in the setnet permit and shore lease to Kevin. We therefore affirm the court's decision.

## V.    CONCLUSION

We AFFIRM the superior court's rulings, including removing Cliff as personal representative and approving the estate's final distribution.